### BURRELL OATES v. THE STATE.

#### No. 3168.   Decided May 9, 1906.

**1.—Murder in First Degree—Charge of Court—Accomplice's Testimony.**

Upon a trial for murder where the charge of the court upon accomplice's testimony is the same as that which had been criticised by the Court of Criminal Appeals as being erroneous, there was reversible error. Brooks, Judge, dissenting.

**2.—Same—Charge of Court—Issue of Fact.**

Where upon trial for murder the evidence raised the issue as to whether the defendant or the wife of the deceased shot the deceased, the court should have submitted a charge on that issue, and left the jury to pass upon it. Brooks, Judge, dissenting.

Appeal from the Criminal District Court of Dallas. Tried below before Hon. E. B. Muse.

Appeal from a conviction of murder in the first degree; penalty, death.

The court below gave the following charge on accomplice's testimony: "The court instructs you that the witness Frank McCue under the evidence in this case and under the law as it is written is an accomplice, and you are further instructed that you cannot find the defendant guilty upon his testimony unless you are satisfied that the same has been corroborated by other evidence tending to establish that the defendant did in fact commit the offense—the evidence of the accomplice must be corroborated not merely as to the commission of the crime, but also by evidence tending to show defendant's connection with its commission; in other words the corroborating evidence must of itself and without the aid of the testimony of the accomplice tend in some degree to connect the defendant with the offense committed."

The opinion states the case.

*J. E. Forrest, W. L. Bibb & A. S. Baskett,* for appellant.—The charge of the court with reference to the testimony of Frank McCue is clearly on the weight of the testimony, and it has been uniformly so held, and is erroneous in that it only requires the corroborating testimony to "tend in some degree" to connect defendant with the offense committed. On the question as to who killed the deceased: Taylor v. State, 55 S. W. Rep., 961; Butler v. People, 18 N. E. Rep., 338; 1 Wharton on Criminal Law, par. 627; 2 id., 7th edition, pars. 941, 964, and 1001.

*J. E. Yantis,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—The jury assessed the death penalty for murder. This is the second appeal of this case: the first being reported in 12 Texas Ct. Rep., 921.

The questions with reference to change of venue, motion to quash venire, overruling challenge to juror Filcher, calling the case out of its regular order, and the supposed error in overruling application for continuance will not be discussed for they may not arise upon another trial, and some of them cannot so arise. The question suggested for a change of venue may not be involved upon another trial, and if so, it would become a question under the proof then offered. The absent witnesses may be before the court on another trial.

Exception was reserved to the charge of the court in regard to the law of accomplice's testimony. The charge is the same as that which this court has criticised as being erroneous, and upon which many cases have been reversed. The last one called to our attention is Barton v. State, 14 Texas Ct. Rep., 855. That case was reversed upon a similar charge and the authorities collated. See also in point Garlas v. State, 13 Texas Ct. Rep., 690; Crenshaw v. State, 12 Texas Ct. Rep., 758; Hart v. State, 11, Texas Ct. Rep., 190; Jones v. State, 72 S. W. Rep., 845; Washington v. State, 82 S. W. Rep., 653; Bell v. State, 39 Texas Crim. Rep., 679. We do not deem it necessary to discuss the question further in the face of these decisions. The charge was erroneous.

It is contended that the court erred in not charging the jury in regard to a question insisted upon as being raised by the evidence; that is, that Mrs. Aranoff (wife of deceased) and not appellant or Vann, killed her husband, and that she did it accidentlly in shooting at her husband's assailant. The theory of the State is that Vann and appellant entered the business house of deceased Aranoff for the purpose of robbery; that while there they became engaged in a difficulty with him, which ended in Vann shooting him. One of the defensive theories was that appellant did not shoot him but that his wife shot deceased in shooting at himself. Under the testimony of the former appeal, reported in 12 Texas Ct. Rep., 921, we held that it was not error to refuse to submit this issue. The evidence upon this trial bearing on this question is, from the witness Mrs. Aranoff, that the parties (appellant and Vann) came in the door on Houston street, which she called the front door. When the last shot (the one which she claims killed her husband) was fired, her husband was facing the front door. The first shot was fired by the white man and the next by the negro; and the last shot by the white man. When the last shot was fired, deceased's face was still towards the front door. When the first shot was fired, this witness left the room for her pistol, and came back after the first two shots were fired. She states that she then shot at the negro, and the negro had her husband by his

right hand; that she shot at the negro as soon as she got through the screen door; that she was going to the assistance of her husband. At the time she fired she was standing by the left side of her husband, and the negro was in front of him, having hold of deceased's right hand with his left. She and her husband were just behind the west end of the bar, and the negro had deceased's arm drawn over the bar. This bar was about four feet high, and her husband was facing Houston street. The white man was standing over next to the grocery counter on the opposite side of the room, and to her husband's right, when he fired the shot which she says was fatal. She says, "I am positive the defendant did not shoot after I came into the room with my pistol, and neither of the shots fired before I went for my pistol struck my husband." The bureau is in the dining-room next to the window, facing Houston street. She says, that as soon as she returned with her pistol through the screen door, she tried to shoot the negro, and thought she had hit him but was so excited, missed him; that when she shot at the negro the white man shot straight at her husband's breast. "He was shot in the left breast. Holly Vann shot him." Nathan Aranoff, testified: he was sleeping on the cot in the dining-room; there was a bureau in the corner of that room at the end of his cot; that one of the shots struck the bureau, near where he was asleep. He only heard two shots; they woke him up. "I did not hear the two shots before my mother went into the bedroom." Dr. Tipton testified that he was called to the Aranoff place on the night of the killing, and found a gunshot wound in the left breast to the right of the nipple; it looked to be made with a 38-caliber ball. The ball went straight in through the apex of the heart. This was the only wound in his body; did not probe the wound, only inserted his little finger as far as he could, which was about one-quarter of an inch. The wound was so small that he could not insert his finger farther. The ball did not pass out. He further states: "I do not remember what I testified before. If I testified that the wound was to the left and above the left nipple that was right, because my memory was fresher then, than now. My memory is not clear on the wound location now. In any event, the ball went towards the center of the body. The wound looked a little large for a **32**-caliber ball. It is only my opinion that it was made by a 38-caliber. A wound made several feet away is smaller than one made right at the person shot. There would be practically no difference between the size of a wound made by a 32-caliber ball at close range, and one made by a 38-caliber several feet away. It would be impossible for one standing at the grocery counter, where you say witness Holly Vann was standing, to make the wound I found on Sol Aranoff, if he was standing behind the bar, facing the door on Houston street, as you say—whether the wound was to the right or the left of the left nipple." Vann had a 38 Smith & Wesson nickel-plated hammerless pistol. If the testimony is as cogent

upon another trial as this record shows, we think the court should submit the issue as to whether Mrs. Aranoff shot her husband in shooting at the negro. If the ball from her pistol produced the death of her husband, appellant could not be convicted for murder. We think this testimony is sufficiently cogent to raise the issue for the decision of the jury. Dr. Tipton's testimony, and the position of the parties as placed by the witnesses would lend force and cogency to the theory of the defendant, that the wife and not Vann did the killing. There is no pretense that appellant did the killing. He is sought to be held by reason of the fact that he and Vann were undertaking to rob deceased, and Vann did the shooting. If the probabilities are that Mrs. Aranoff may have done the killing, appellant might be guilty of an assault with intent to rob, assault with intent to murder, but not of murder. Or he might be guilty of robbery, under the facts which are unnecessary to state bearing on that issue; but unless he or Vann did the killing he would not be guilty of murder. As before stated, if the testimony is as cogent upon another trial as this, we are of opinion that this issue should be submitted to the jury. Every issue favorable to appellant should be charged, and left for the jury to pass upon.

The other questions, as we view the record, are not necessary to be discussed.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

BROOKS, Judge (dissenting).—I do not agree with the opinion of the majority of the court reversing this case. While the authorities cited by the majority hold the court's charge on accomplice's testimony to be erroneous, still in my opinion, under article 723, Code Criminal Procedure, reversal is not authorized, unless the error in the charge was calculated to injure the right of appellant. The question thus arises, does this charge injure the rights of appellant? I say not. The evidence shows substantially the following facts: Mrs. Aranoff testified that appellant, in conjunction with Holly Vann, came to their store, where she and her husband lived, each having a pistol, and presented the same on her husband (deceased) and ordered him to throw up his hands. Her husband threw up his hands, and insisted if they wanted his money to get it out of the cash drawer. She rushed to the assistance of her husband, and thereupon appellant shot at her husband, and his codefendant, Holly Vann, shot and killed her husband. Upon this trial she thoroughly identified appellant as the party who assisted in the killing of her husband. The State introduced Chas. Adams, who testified among other things that on the night of the homicide he heard three shots in the house where the homicide occurred. At the time of the shooting he was tying his cow on a lot adjoining to house, in order to permit her to graze, and immediately raised up and saw two men coming from under the shadow

of a little gallery on the Aranoff place. When they came from under the shadow of the gallery they came into the light, because the light reflected from the electric light, and also from the cars that were passing. "I do not suppose it was over thirty or forty feet from the electric light to where they came out of the house. That was an arc light; it was hanging up from the ground. I expect I was about seventy-five or eighty feet from those two men when they came out. I saw one of them very distinctly, but the other did not come exactly towards me. When they came out of the house they were running, or hopping along like they were running. They ran east or southeast. They were not coming directly towards me at that time. They were not going from me, but coming towards me. One of the men might have come within thirty feet of me. I thought I knew that man, when I saw the shape of his shoulders and head. When I saw his face I recognized him. He was a black man. I see that man in the courtroom now. The defendant is that man. I am certain of that in this way. I did not know his name; I had seen him a number of times, but it was seven or eight years ago, when I knew him. I knew him by reputation. I knew him when I saw him, and knew who he was. At the time I saw him that night I did not know his name, but before that, seven or eight years ago, I knew his name. On this night I do not remember whether he had on a derby hat or cap. He had on some kind of a hat that did not have much brim to it, I know; I am certain he is the man that passed by me there. I did not see either of them when they came out of Aranoff's door, as they were coming out of the shadow. I know he was the man that was coming from there. It was only a few minutes or a few seconds time after these shots were fired, until these men came out of there. It was not over a minute." This witness also testified to facts indicating that he had seen appellant before that night, and at various other times, and thoroughly identified appellant as the party who came running out of the house at the time of the homicide. The other evidence for the State, and part of that for the defense, placed appellant near and about the house both before and after the homicide. There is no controversy on the part of the State and appellant as to the fact that appellant was quite near the scene of the homicide. The testimony of the defense all goes to show this. Now, the testimony of the witness McCue, who was also indicted with appellant and Holly Vann for this homicide, is to the effect that appellant, Holly Vann and himself got in a buggy, rode over to Oak Cliff, something over a mile from the scene of the homicide; that they secured the buggy back of the Everett saloon, which is also in the immediate neighborhood of where the homicide occurred; and after they returned from Oak Cliff, Holly Vann suggested they hold up Sol Aranoff, the deceased. The accomplice McCue, swears that he refused to assent; but that appellant and Holly Vann immediately started in the direction of Aranoff's store, and he (McCue) went to a saloon nearby. He testi-

fied to statements on the part of Holly Vann, and perhaps appellant, indicating that they had robbed and brutally killed deceased, Aranoff. Now, taking the above statement of the record, together with many other features of it unnecessary to state, I cannot believe that the charge in the matter complained of, could have injured appellant, because it is conclusively established from the mouths of two wit-. nesses, other than the accomplice McCue, that appellant was present and participated in the homicide. Furthermore, the court in its charge tells the jury that they are the sole and exclusive judges of the credibility of the witnesses and of the weight to be given their testimony, and that they must believe appellant guilty beyond all reasonable doubt before they could convict him.

However, as an original proposition, I believe the charge complained of is correct. Under a long line of old precedents it was uniformly held good, and no one can read the charge and say it is on the weight of the evidence. The authorities cited by the majority lay down a rule for a charge on accomplice's testimony that is upon the weight of the evidence, and is a direct intimation on the part of the court to the jury that the court decides the credibility of the accomplice's testimony. Furthermore there is no law in this State that justifies the previous opinion of this court (12 Texas Ct. Rep., 921), holding McCue an accomplice in law by sheer force of the fact that he was indicted for the same offense and agreed to tell what he knew about the crime with which appellant was charged; it takes evidence to make one an accomplice; the law does not do so. It might not have been a just conclusion from the evidence that one is an accomplice; but it is at variance with every precedent of this court to hold that the mere fact that one is indicted for a crime and turns State's evidence, under the promise to tell what he knows about the offense, that per se he is in law an accomplice. If his evidence and the other evidence completely exculpates him, he may not be an accomplice. The fact of being indicted and agreeing to tell what he knows about the crime for which appellant is on trial may be sufficient to justify the court in submitting the issue to the jury as to whether or not he is an accomplice, but certainly these facts do not prove as a question of law that he is an accomplice. The former opinion in this case, supra, relies upon Barrara v. State, 42. Texas, 260, as authority for the converse of this proposition. There is some dicta in the opinion warranting such a conclusion, but a casual inspection shows that the court merely approved a charge submitting to the jury the issue of accomplice's testimony, and held that the charge ought to have been given to the jury submitting said issue. It is an axiomatic proposition of law that criminality depends upon facts and not upon law. The mere fact that one is indicted, either separately or jointly for the same offense, and agrees to tell what he · knows about the crime where his codefendant is being tried, does not per se make him an accomplice. To so hold, as was done

on the former appeal of this case, makes a man guilty of an offense whether the fact so show or not. I cannot agree to such a position.

Nor do I agree with the opinion of the majority that the evidence called for a charge from the court as to whether or not Mrs. Aranoff fired the shot which killed deceased. This matter was discussed on the former appeal, and the court held it was not necessary to so charge. The evidence is substantially the same in this respect on this appeal as on the former appeal; and the court properly failed to give such a charge.

As I view the record there is no reversible error, and the judgment should be affirmed. So believing I dissent from the opinion of the majority.