### BURRELL OATES v. THE STATE.

No. 1757. Decided June 26, 1912.

Rehearing denied October 16, 1912.

1.—Murder—Jury and Jury Law—Challenges.

Where, upon trial of murder, it appeared by the record on appeal that no objectionable juror was forced upon defendant, there was no reversible error; it not appearing that the juror who sat upon the case was legally objectionable. Following Berg v. State, 64 Texas Crim. Rep., 612, and other cases.

2.—Same—Evidence—Contradicting Witness—Surprise.

Where, upon trial of murder, it was not clear that there was any particular or material difference between the positive statement of the witness of the State made in 1904 that two shots were fired, and the statement made on the trial in 1911 by the witness that he did not know how many shots were fired, and no injury was shown to the defendant in excluding the testimony of the witness given in 1904, and there was a serious question as to whether or not the matter of surprise could be urged, there was no reversible error.

3.—Same—Evidence—Moral Turpitude—Remoteness.

Where, upon trial of murder, the testimony admitted showed that the defendant, after serving two years in the penitentiary for manslaughter, was only at liberty about five years when he was again convicted of homicide and sent to the penitentiary and that he had only been at liberty one year when arrested in the instant case and had since been in jail, there was no error in admitting this testimony, although the first conviction was nineteen years and the second conviction about twelve years prior to the time of the trial, as this was not too remote. Qualifying Winn v. State, 54 Texas Crim. Rep., 538.

4.—Same—Charge of Court—Principals.

Where, upon trial of murder, it was clear from the evidence that defendant fired at deceased at the time of the homicide and that he and his companion were charged therewith, there was no error in the charge of the court that if the defendant participated in the transaction and did the killing, and the murder was committed in the act of a robbery, to convict him of murder in the first degree.

5.—Same—Charge of Court—Accomplice.

Where the court's charge on accomplice testimony was in compliance with the form laid down in approved precedent, there was no error. Following Campbell v. State, 57 Texas Crim. Rep., 301, and other cases.

6.—Same—Sufficiency of the Evidence.

Where, upon trial of murder, the same resulted in the death penalty, and the verdict was supported by the evidence, there was no reversible error.

7.—Same—Loyalty of Counsel—Attorney and Client.

See opinion for commendation by the court of the loyalty of counsel for the defendant, under the appointment of the court.

Appeal from the District Court of Ellis. Tried below before the Hon. F. L. Hawkins.

Appeal from a conviction of murder in the first degree; penalty, death.

The opinion states the case.

*A. S. Baskett,* for appellant.—On charge of the court that the defendant did the killing: Oates v. State, 50 Texas Crim. Rep., 39;

Taylor v. State, 55 S. W. Rep., 961; Butler v. People, 18 N. E. Rep., 338; 1 Wharton Crim. Law, 627; 2 Wharton Crim. Law, 7th ed., par. 947-1001.

On question of excluding contradictory statements of State's witness: Blake v. State, 38 Texas Crim. Rep., 377; Vardan v. State, 25 S. W. Rep., 777; Levy v. State, 28 Texas Crim. App., 203; Campos v. State, 50 Texas Crim. Rep., 289.

On question of moral turpitude: Bowers v. State, 71 S. W. Rep., 284; Wesley v. State, 85 S. W. Rep., 802; Dyer v. State, 77 S. W. Rep., 456; Ware v. State, 49 Texas Crim. Rep., 413; Winn v. State, 54 id., 538; Bogus v. State, 55 id., 126; Busby v. State, 48 id., 83; Carroll v. State, 32 id., 431; Brown v. State, 56 id., 389; White v. State, 57 id., 196; Thomas v. State, 63 id., 98.

On the question of second degree principal: Oates v. State, 51 Texas Crim. Rep., 449; Red v. State, 39 id., 667; Leslie v. State, 42 id., 65.

On question of charge on accomplice testimony: Oates v. State, 50 Texas Crim. Rep., 39; id., 51 id., 449; Barrett v. State, 55 id., 182; Tate v. State, 55 id., 397.

*C. E. Lane,* Assistant Attorney-General, and *C. A. Pippen,* County Attorney, for the State.—On question of moral turpitude: Carroll v. State, 32 Texas Crim. Rep., 431; Winn v. State, 54 Texas Crim. Rep., 538, 113 S. W. Rep., 918; Payne v. State, 50 S. W. Rep., 363; Davis v. State, 52 Texas Crim. Rep., 629, 108 S. W. Rep., 667; Scoville v. State, 77 S. W. Rep., 792.

On question of challenge of juror: Cases cited in opinion.

On question of rejecting contradictory testimony: Smith v. State, 78 S. W. Rep., 519; Erwin v. State, 24 S. W. Rep., 904; Dunagain v. State, 44 S. W. Rep., 148; Finley v. State, 47 S. W. Rep., 1015; Quinn v. State, 51 Texas Crim. Rep., 155, 101 S. W. Rep., 248; Knight v. State, 65 S. W. Rep., 88; Ware v. State, 49 Texas Crim. Rep., 413, 92 S. W. Rep., 1093.

On question of accomplice testimony: Jones v. State, 63 Texas Crim. Rep., 394, 141 S. W. Rep., 953, and cases cited in opinion.

DAVIDSON, PRESIDING JUDGE.—The homicide of which appellant was convicted occurred in Dallas about the 30th of November, 1904. This is the fifth appeal from conviction, each of which resulted in the death penalty. The first appeal is found reported in 48 Texas Crim. Rep., 131, the second in 50 Texas Crim. Rep., 39, the third in 51 Texas Crim. Rep., 449, and the fourth in 56 Texas Crim. Rep., 571. The facts are sufficiently set out in the first appeal found in 48 Texas Crim. Rep., 131.

1. The first bill of exceptions is lengthy and was reserved to the rulings of the court in regard to empaneling the jury. It is contended that by these rulings appellant was deprived of one or more of his

peremptory· challenges. We deem it unnecessary to review this bill of exceptions at any length. No objectionable juror was forced upon defendant. The jurors whom he contends should have been excused for cause at his request were excused by him peremptorily, therefore none of them sat upon the case. To the last juror taken there was urged no cause for challenge. The rule now seems to be well settled that unless a juror is legally objectionable who sat upon the case, prior rulings of the court in regard to the competency of jurors will not afford ground for reversal. Holt v. State, 9 Texas Crim. App., ·571; Loggins v. State, 12 Texas Crim. App., 65; Holland v. State, 31 Texas Crim. Rep., 345; Keaton v. State, 41 Texas Crim. Rep., 621; Rice v. State, 54 Texas Crim. Rep., 149; Bean v. State, 17 Texas Crim. App., 60; Hudson v. State, 28 Texas Crim. App., 323; Long v. State, 59 Texas Crim. Rep., 103; Berg v. State, 64 Texas Crim. Rep., 612, 142 S. W. Rep., 884; Mancillas v. State, 76 S. W. Rep., 469; Johnson v. State, 49 Texas Crim. Rep., 314. This rule has been so long settled it is deemed unnecessary to discuss it further.

2. Another bill discloses that appellant placed upon the witness stand Nathan Aronoff, son of the deceased, Sol Aronoff, who testified that on the night of the killing of his father he was sleeping in the back room of the store on a cot; that the cot was in the northern part of the room up next to the north wall; that his head was turned west, and his feet east, towards the door in the corner; that there was a bureau of drawers at his head, probably a foot away; that he was awakened that night by a shot, the ball striking the casing of the bureau; that he did not remember how many shots he heard; that he had a confused idea that there were more shots fired after that, but he does not know. He further testified that he remembered testifying in the case in December, 1904, but that he did not remember testifying that he did not hear but two shots. That thereupon the defendant offered to read in evidence from his testimony as given in the said trial in December, 1904, on direct examination, as follows:

"I was aroused by the sound of shots and one of the bullets striking the bureau near the place where I was sleeping;" and from his cross-examination on said trial as follows: "One of the shots struck that bureau. I heard only two shots. One of the shots woke me up." To this the county attorney urged objection, which was sustained by the court. Appellant excepted to this ruling of the court. What the purpose was for offering this testimony is not stated in the bill, but giving the defendant the benefit of the purpose for which it might be used, to wit: of contradicting the witness, we are of opinion it does not show any error. The court qualifying this bill adds this statement to it:

"The Court of Criminal Appeals is referred to pages 49, 50, 51 and 62 of the statement of facts as a part of and explanatory of the foregoing bill; the statement by the attorney that 'I really knew this was an obstinate witness,' as shown on page 50, was not justified either

by the manner or appearance of the witness, but the witness impressed me as being extremely courteous, and as trying as best he could to recall and state facts which transpired seven years ago, and at a time when this witness was only eleven years old: when the attorney for the defendant stated that he was surprised at witness' testimony I at first told him that he could read that part of the witness' testimony given at the trial in 1904, but the testimony of the witness given in 1911 at the February term upon this point was examined and found to be practically the same as given on this trial, hence I concluded there was no surprise of counsel, and to permit him to read what he desired to read would have been improper merely as supplying what the witness had not testified to. I here append as a part of this qualification and explanation, marked Exhibit 'A,' the testimony of the witness on this point given on the trial at the February term, 1911, for the purpose of showing that counsel knew what the witness would say on this point when he called him as a witness. And with this explanation and exhibit the bill is approved and ordered filed as a part of the record in this cause."

The above is the qualification or statement of the judge appended to the bill. Exhibit A also appended to and made a part of this bill shows that this witness' testimony on the trial in 1911 was the same as on this trial. One of the answers in 1911 will be thus quoted: "Q. How many did you hear at that time? A. I don't remember. I have a sort of confused idea—I don't know how many I heard." Had the witness not testified as shown in 1911, appellant would have been justified in relying upon the fact that the witness would swear on this trial as he swore in 1904, that is, that he heard two shots instead of testifying as he did upon this trial, that he was confused in regard to the matter and did not know how many he heard. But the witness having testified on the trial in 1911 as he now testified, there may be a very serious question as to whether or not the matter of surprise could be urged; but surprise aside, it is not believed that the testimony of the witness was in any way injurious to appellant. It is not clear that there is any particular or material difference between the positive statement made in 1904 that two shots were fired, and the statement now made that he, witness, did not know how many were fired, that he was confused in regard to the matter, nor is the exclusion of this evidence injurious to appellant. The witness was asleep and aroused by reason of the noise produced by the shooting. Whether he heard two or more of the four shots fired was not, in our judgment, material, and his failure to recall or state now that there were only two shots fired would not be injurious. There seems to be no question that four shots were fired, and whether the boy heard only two or all of them, or was confused about the number, could not result injuriously to the accused.

3. Another bill recites that before defendant was placed upon the witness stand in his own behalf, in the absence of the jury, he made

a statement to the court to the effect that he desired to testify in his own behalf, and whereas in fact in 1892 he had been convicted in Tarrant County, Texas, on a plea of guilty to manslaughter, and given a term of two years in the penitentiary, and again in Dallas County, Texas, in April, 1899, he had been convicted of murder in the second degree, on his plea of guilty, and given a sentence of five years, and whereas both of said convictions are "now too remote and stale" to be admissible as evidence bearing upon the credibility of the defendant as a witness, therefore he moved the court to direct the county attorney not to interrogate him in reference thereto. This motion or request of appellant was overruled, and thereafter while appellant was upon the witness stand as a witness in his own behalf, and after he had testified that he was now thirty-eight years of age, the county attorney, on cross-examination, asked the defendant if he had not been convicted and served two sentences in the penitentiary for killing people. Appellant urged objection on the ground that same called for an answer with reference to the conviction in Tarrant County in 1892, and the conviction in Dallas County in 1899, as set forth in his motion made to the court, and that same was too remote and stale to be admissible against him as affecting his credibility as a witness, one being nineteen years ago when defendant was only nineteen years of age, and the other over twelve years ago. These were overruled, and the court required the defendant to answer, and he did answer that he had been convicted twice, once in Tarrant County in 1892, wherein he pleaded guilty to manslaughter, and was given a sentence of two years, and again in Dallas County in April, 1899, in which he pleaded guilty to murder in the second degree and was given a five years sentence in the penitentiary, and that he had served both sentences. The court signs this with the statement that "The facts were, that this defendant, after serving two years in the penitentiary for manslaughter from Tarrant County was only at liberty about five years when again sent to the penitentiary from Dallas County for five years for killing another person, and had only been at liberty about one year when arrested, charged with the Aronoff murder on November 30, 1904, the next morning after the killing, and has been in jail continuously since that time. There does not appear to have been any very successful efforts at reformation which would make it improper to admit this proof for impeachment. Approved with foregoing explanation. F. L. Hawkins, Judge."

Numerous cases are cited by appellant in support of his contention that the evidence should not have been admitted as it was too remote; that there may have been an opportunity for him to have reformed and become a worthy citizen. Appellant's idea of the matter seems to be that inasmuch as the first conviction was nineteen years prior to the time of the trial, and the other about twelve years prior to the time of the trial, that they were too remote. None of the cases cited by appellant are in point. The facts here show that from the

time appellant got out of the penitentiary under the first conviction to the time of this homicide was something like ten years, and from the time he was discharged from the penitentiary under the second conviction to the time of this homicide was less than twelve months. So that it will be discovered that from 1892 up to November, 1904, appellant had served practically seven years of the twelve in the penitentiary. The Winn case is cited with some degree of confidence by appellant. That case is found reported in 54 Texas Crim. Rep., at page 538. The opinion was delivered by Judge Brooks. The facts in regard to convictions used against Winn would show that he was indicted and tried for the homicide of a Mexican in 1887 or 1888, and that in 1894 he plead guilty to the theft of hogs. . Appellant objected, which objection was overruled, to the admission of the testimony. The trial of Winn occurred May, 1908, fourteen years after the conviction for the theft of hogs with no intervening convictions. Under all the authorities the court was correct in the Winn case in holding such testimony inadmissible; but we do not find such a state of facts in this case. Here the appellant had been twice sent to the penitentiary within seven years, once in 1892, and again in 1899, and had been released from the penitentiary less than a year at the time this homicide was committed. Quoting from the Winn opinion this language is found: "Testimony of this character after a long lapse of years should not have been introduced where there was nothing in the record to show that defendant has not reformed. In other words, the law will not permit the early indiscretions of a witness to be brought into requisition to besmirch and becloud his subsequent life. To do so, as expressed by Judge Greenleaf in one of the cases cited below would be to preclude any possible chance of a reform and would enable State's counsel to parade the early misdeeds of a subsequently useful life to be introduced to becloud and discredit the subsequently honorable and useful life." In the Winn case there was nothing to show that during the fourteen years from 1894 until May, 1908, that appellant had been guilty of anything that tended to impair his reputation or standing. In this case appellant during the twelve years commencing in 1892 had been twice convicted of homicide, and the third time arrested for another homicide. The facts show, however, in this case that appellant had not given any evidence . of a reformation. On the contrary, he seemed to have been given to taking human life. Three homicides within twelve years, two convictions does not afford much evidence of a reformation or returning from a vicious life. This matter will be looked at not in the light of nineteen years from the date of this trial back to 1892, but in the light of the convictions and homicides from 1892 to the time of this homicide in 1904. He has been in jail since the homicide in this case in November, 1904, about seven years. The homicide occurred November 30, 1904, and this conviction occurred October 30, 1911. So of the nineteen years from the first conviction to the last convic-

tion appellant was in jail or in the penitentiary twelve or thirteen years of the time, each time on a charge of homicide. We are of opinion that the court was not in error in admitting this testimony.

4. There is another bill of exceptions found in the record reserved to an excerpt from the charge, which reads as follows: "Now, if you believe from the evidence, beyond a reasonable doubt, that Burrell Oates, in Dallas County, Texas, on the 29th day of November, 1904, did unlawfully, with malice aforethought, either express or implied, and while in the perpetration of robbery, kill said Sol Aronoff by then and there shooting the said Sol Aronoff with a pistol, you will find the defendant guilty of murder in the first degree." The objection urged to this charge was there was no testimony upon which to base it, and it is calculated to confuse the jury and impress them with the belief that the court was of the opinion that defendant and not Holly Vann shot and killed the deceased. The entire paragraph of the court's charge in this matter should be stated. Immediately following the above quoted language from the charge this language follows: "Or if you believe from the evidence, beyond a reasonable doubt, that in said Dallas County, Texas, on said 29th day of November, 1904, one Holly Vann did unlawfully, with malice aforethought, either express or implied, and while in the perpetration of robbery, kill said Sol Aronoff by then and there shooting the said Sol Aronoff with a pistol, and that the defendant, Burrell Oates, was present, and with his malice aforethought, either express or implied, knowing the unlawful intent of the said Holly Vann, aided by acts the said Holly Vann in killing the said Sol Aronoff (if he did) then both Holly Vann and the defendant would be guilty alike, and if you so believe from the evidence, beyond a reasonable doubt, you will find the defendant guilty of murder in the first degree; or if you believe from the evidence beyond a reasonable doubt that the defendant, Burrell Oates, and Holly Vann had entered into an agreement with each other to rob Sol Aronoff, and to use firearms to accomplish such robbery, and agreed to act together with each other in the perpetration of such robbery, and previously formed a design in which the minds of both united and concurred in a common intent to perpetrate such robbery in pursuance of a previously formed design, and that they and each of them understood and intended at the time that if it became necessary to effect the accomplishment of such robbery, or if any resistance was offered upon the part of said Sol Aronoff, or to prevent such resistance, that they would take the life of said Sol Aronoff, and that in pursuance of said common intent and design (if any) the said Burrell Oates, acting in conjunction with Holly Vann, went to the store of said Sol Aronoff, and that Holly Vann, in Dallas County, Texas, on the 29th day of November, 1904, did unlawfully, with malice aforethought, either express or implied, and while in the perpetration of said robbery (if any) kill said Sol Aronoff by then and there shooting him with a pistol, and that Burrell Oates was

present at the time, and with his malice aforethought either express or implied, was doing some act in pursuance of the common design and intent (if any) or both to accomplish the robbery of said Sol Aronoff and overcome or prevent resistance thereof (if any) then both Holly Vann and the defendant would be guilty alike, and if you so believe from the evidence, beyond a reasonable doubt, you will find the defendant guilty of murder in the first degree."

The contention that the first section of the charge given was error, we think, is not correct under the facts. The evidence justified it. The charge copied submitted every theory made by the evidence as we understand the testimony. If it was clear or if the facts showed that appellant did not kill the deceased, there might be a serious question in the case under the first clause of this charge. The authorities will bear out the proposition that where two or more parties are acting together and one of them does the actual shooting or killing, and the others do not, but are guilty only by reason of their presence and encouragement of the party actually killing, then it would be error for the court to charge the jury to convict if the party did the shooting or the actual killing. In other words, where the party participated as a principal in the transaction not by actual shooting, but only by encouraging, it is error to submit the case to the jury on the theory that he in fact did the killing. In this case, however, there is evidence upon which the jury might find that this appellant fired the fatal shot. There is also evidence upon which they could find there was an agreement entered into between Vann and appellant to rob, and if necessary to accomplish the robbery, to kill Aronoff. There is also evidence showing that they went to the place for the purpose of robbing, and if necessary to consummate the robbery to kill. There is evidence that both Vann and appellant fired at Aronoff, the deceased. Mrs. Aronoff testified positively that Holly Vann shot at her husband twice and appellant fired once. There is evidence from Mrs. Aronoff that Holly Vann fired the fatal shot. There is evidence that while he fired two shots, that neither one of them took effect on the body of the deceased. There is evidence from which the jury could infer that the shot fired by appellant produced the death of deceased. Deceased was struck by one ball. This went in practically on the left side, and was testified to be a 38-calibre pistol ball. There is evidence that appellant fired the pistol that carried the 38-ball. There is evidence that his position with reference to the deceased was such that a shot fired by him would have entered the left side. It may be doubtful whether the shot fired by Holly Vann did enter the left side or could have done so. Any way, the doctor who testified stated that he examined the wound and inserted his finger in it and in his judgment it was a 38-calibre pistol that made the wound. With the evidence in this condition we are of opinion the court did not commit error in giving the charge to which the exception was reserved.

5. There is some criticism of the charge on accomplice testimony. We deem it unnecessary to review this matter. The charge is in accord with the decisions of this court, and is as follows:

"You are instructed that the witness, Frank McCue, is an accomplice. Now, you can not convict the defendant upon his testimony alone unless you first believe his testimony is true, and that it connects the defendant with the offense charged, and even then you can not convict the defendant upon said testimony unless you further believe there is other testimony in the case corroborative of the accomplice's testimony tending to connect the defendant with the offense charged; and the corroboration is not sufficient if it merely shows the commission of the offense, but it must tend to connect the defendant with its commission, and then from all the evidence you must believe, beyond a reasonable doubt, that the defendant is guilty."

This seems to be in compliance with the form laid down in Campbell v. State, 57 Texas Crim. Rep., 301, 123 S. W. Rep., 583, and subsequently approved by this court in the following cases: Brown v. State, 57 Texas Crim. Rep., 570, 124 S. W. Rep., 101; Jordan v. State, 62 Texas Crim. Rep., 388, 137 S. W. Rep., 114; Spates v. State, 62 Texas Crim. Rep., 532, 138 S. W. Rep., 393; King v. State, 56 Texas Crim. Rep., 68, 123 S. W. Rep., 135; Shrewder v. State, 62 Texas Crim. Rep., 403, 133 S. W. Rep., 281; Murphy v. State, not reported; Jones v. State, 63 Texas Crim. Rep., 394, 141 S. W. Rep., 953.

6. It is also contended that the evidence does not show with sufficient certainty to justify this conviction that appellant is guilty. If the State's evidence is to be believed, we are of opinion that the jury was justified in their conclusion. McCue testifies that he and Holly Vann and Burrell Oates went to Oak Cliff in a buggy on the night of the homicide, and when returning they passed Aronoff's place of business, and Holly Vann made some suggestion in regard to robbing Aronoff. That Vann and appellant got out of the buggy, which belonged to Vann, for the purpose of going into Aronoff's place of business and committing the robbery. They discussed their pistols when they got out of the buggy as to which one should carry the larger pistol and which the smaller. That he drove on and put up the buggy. There is also some statements in the record by one of the witnesses that appellant told him about the shooting after it was over in which he connected himself with the robbery and shooting. In addition to this, Mrs. Aronoff testified to appellant's presence at the time of the robbery and homicide, and his participancy in it during which he fired one of the shots at her husband. There were four shots fired, two by Vann, one by defendant and one by Mrs. Aronoff. There are some other facts and circumstances, but we deem it unnecessary to recapitulate them. The jury believing these facts was justified in finding their verdict. Appellant, on the contrary, testified he did not participate in the killing or the robbery, and was not

there; that he did not go to Oak Cliff with McCue and Vann and did not return with them in the buggy, and was in no way connected with the transaction; He proved a very satisfactory alibi if the jury had believed the witnesses in opposition to the State's testimony. The truthfulness of the witnesses, their credibility, and the weight to be attached to their evidence is peculiarly a matter for the jury. They found against appellant, and under the condition of this record we do not feel justified in saying and holding that the verdict is not supported by the facts, or that the jury was in error in arriving at their conclusion.

This has been rather a remarkable case in the history of criminal trials in this State. This is the fifth appeal by the appellant from a death penalty conviction. Mr. Baskett, attorney for appellant, was appointed by the court at the inception of the case to defend appellant. That he has done his duty in this case faithfully and to his credit will be borne out by the record of the five appeals as well as by the arduous work in the trial court when appellant stood before the jury with his life in the balance. The ability, the courage and the fealty displayed by Mr. Baskett for his client in this long legal battle is worthy of commendation. The records in this case as they have come before this court, the briefs filed by Mr. Baskett in defense of his client for his life and legal rights, and the able oral arguments before this court as well as before the trial courts, evinces a loyalty and ability that worthily commend Mr. Baskett as a lawyer true to the courts, true to his clients and true to legal ethics. It would not be saying too much to say that perhaps no lawyer could have rendered better service for his client and more efficient. The jury, however, would not agree with him on the facts, and the court at last has given the defendant a fair and a legal trial, and we must, therefore, conclude by saying under the record here presented we believe there is no such error as would justify a reversal of the judgment, and it must be affirmed.

*Affirmed.*

[Rehearing denied October 16, 1912.—Reporter.]