### J. W. MADDEN v. D. H. HARDY, SECRETARY OF STATE.

No. 784. Decided May 4, 1899.

**1. Secretary of State—Biennial Report.**

Though no statute directly requires the Secretary of State to make a report to the Governor or Legislature, his duty to do so appears to be recognized by Revised Statutes, article 965. (Pp. 614, 615.)

**2. Same—Copies to Be Delivered to Officer.**

The 300 copies of the report of a State officer required by Revised Statutes, article 4230, to be delivered "to the officer making the report for his use," were intended for use and distribution by the office from which the report emanated, and not for the private use of the person making them. (Pp. 615, 616.)

**3. Same—Mandamus.**

Where the term of office of the Secretary of State expired and his successor qualified before the biennial report of the former was printed, he was not entitled to mandamus to compel his successor to deliver to him the 300 copies of such report which Revised Statutes, article 4230, required to be delivered to the officer making it. (Pp. 615, 616.)

**4. Statutory Construction—Constitution.**

Language in a statute which admits of two constructions, one of which would render the act unconstitutional in some of its provisions, should receive the construction which would render all its provisions constitutional. (P. 616.)

ORIGINAL APPLICATION to the Supreme Court for writ of mandamus.

J. W. Madden applied for the writ to compel D. H. Hardy, his successor in the office of Secretary of State, to deliver to him 300 copies of his biennial report, printed after his retirement from office.

*J. W. Madden,* in pro. per., for relator.

*T. S. Smith,* Attorney-General, and *R. H. Ward,* Assistant, for respondent.

GAINES, Chief Justice.—This is a petition for a writ of mandamus filed by J. W. Madden, who was Secretary of State under the last administration, against his successor in office. The relator, near the close of his term of office, made a biennial report to the Governor, which was published by the printing board under his direction. Before the publication was complete, the relator's term of office had expired and the respondent had qualified as his successor. Eleven hundred copies were delivered to the respondent, as Secretary of State, and the relator demanded of him three hundred copies, claiming that they were his individual property. The respondent refused to comply, and this action was brought to compel him to do so. The foregoing statement contains the substance of the allegations in the petition. The answer admits the allegations to be true.

The relator relies upon article 4230 of the Revised Statutes, which reads as follows: "There shall be printed, under the supervision of the Secretary of State, eleven hundred copies of the annual reports of the Comptroller of Public Accounts, Treasurer, Commissioner of the General Land Office, Superintendent of the penitentiary, Superintendent of the lunatic asylum, of the asylums of the blind, deaf and dumb, and the reports of all other officers who are required to report to the Governor or the Legslature; three hundred copies of which reports shall be delivered by the Secretary of State to the two houses of the Legislature for their use, at as early a day as practicable after they are printed; three hundred copies shall be delivered to the officer making the report for his use, and the remaining five hundred copies shall be kept by the Secretary of State for public use, but the printing board may increase the number of copies of such reports required to be printed, not to exceed two thousand."

It is a grave question whether the article quoted applies to the report in controversy. It is to be noted that the report of the Secretary of State is not one of those specifically pointed out in that article; but its provisions are not confined to the reports of the officers specially named, but extend to those "of all other officers who are required to report to the Governor or the Legislature." So far as we have been able to discover, there is no express law which requires the Secretary of State to make either to the Governor or to the Legislature any report except that provided for by section 24 of article 4 of the Constitution. That section is as follows: "An account shall be kept by the officers of the executive department, and by all officers and managers of State institutions, of all moneys and choses in action received and disbursed or otherwise disposed of by them, severally, from all sources, and for every service performed; and a semiannual report thereof shall be made to the governor under oath." Under this provision, he is clearly required to make to the Governor a semiannual report of his receipts and disbursements.

The relator, in his petition, describes the report in question as "his biennial report to the Governor of Texas, showing how the office had been administered during his said term." This would seem to be a different report from that required by the provision of the Constitution quoted. But article 965, which relates to the sale of the court reports, contains this provision: "The Secretary of State shall deliver to the State Treasurer the proceeds of all sales so made by him, of which and of his operations hereunder and of the transactions of the said board hereunder he shall make a full statement and showing in his biennial report." A like provision was found in the Act of May 3,.1882, which relates to the same subject matter. Laws 1882, p. 7. So far as we have been enabled to ascertain, it has been the custom of the Secretary of State to make a report to the Governor near the end of his term of office. The provision quoted clearly recognizes that it is the duty of that officer to make such report. Nay, more, it directly enjoins upon him the duty to make a statement of his sales in his biennial report, and necessarily implies that it is his duty to make a report every two years. Presumably, the report is to be made either to the Governor or the Legislature; so that in either event it comes within the terms of the article first quoted.

This brings us to the meritorious question in the case,—are the three hundred copies which are to be "delivered to the officer making the report" intended for his private use or for his use in his official capacity? The meaning of the article is by no means clear, and its construction is perplexing. The fact that it is provided that "the remaining five hundred copies are to be kept by the Secretary for public use," tends strongly to show that the three hundred copies allowed the officer who makes the report were for his individual use; such, in fact, as we think, is the literal meaning of the words, "for his use," standing by themselves. But, on the other hand, similar language is employed with respect to the copies to be sent to the two houses of the Legislature. They are to be delivered to them "for their use." This means that they are to be delivered for the official use of the two houses and of their members as such. So we think that when the statute directs that the three hundred copies shall be delivered to the officer making the report for his use, it is meant that they shall be for his use as such officer. It is true that following this construction we encounter a discrepancy, but the article is full of discrepancies. If, for example, the copies of the report of the late Attorney-General be delivered to his successor for the use of the office, they are not delivered to "the officer making the report." On the other hand, as has happened in this case, the report may not be printed and ready for delivery before the term of the officer who made it has expired. In such a case, it is inappropriate to speak of him as the officer making the report, because he is no longer an officer. Again, it is incongruous to use language which in its literal meaning makes it the duty of the Secretary of State to deliver three hundred copies to himself. The language of the article is not accurate, and we must try to arrive at the meaning of the Legislature from the policy and spirit

of the enactment. It occurs to us that it was not the purpose of the Legislature to make a gratuity to the officer in his individual right for his personal gratification. We are rather of the opinion that the policy of the enactment was to provide the office from which the report emanated with a sufficient number for the direct use of the office and for distribution by the chief in such manner as in his opinion should be best calculated to subserve the interests of the State. We are not prepared to say that if the Legislature had undertaken to provide for the printing, at the expense of the State, of three hundred copies of the reports of all officers of the State who are required to report to the Governor or Legislature, for their private use, such action would have been unconstitutional. But we do think that it would have been contrary to the spirit of the Constitution and not in accord with the genius and practice of our government. The salaries of many of the officers to whom the act in question applies are fixed by the Constitution. We have under consideration a statute the construction of which is very difficult. One construction would give to the official some compensation for his services in addition to his salary. The statute admits of another construction which would not have this effect. In such a case the latter should be adopted.

We therefore conclude that the copies of the report in question are for the use of the office of the Secretary of State, and therefore the writ of mandamus is refused.

*Mandamus refused.*