## FRANK M. BULLINGTON v. THE STATE

No. 3687. Decided October 13, 1915.

Rehearing denied December 8, 1915.

**1.—Assault to Murder—Newly Discovered Evidence—Practice on Appeal.**

Where the judgment was reversed and the cause remanded on other grounds, the question of newly discovered evidence need not be considered.

**2.—Same—Evidence—Moral Turpitude—Remote Offenses.**

Where, upon trial of assault to murder, defendant's attorney, in the presence of the court and the district attorney, apprised the court that the defendant had been tried and acquitted for murder in the same court fourteen years prior to the instant trial, and to instruct the district attorney that such former charge was not admissible in evidence for any purpose, and not to question defendant about it, and the court thereupon stated that it was too remote, but that the State's attorney had the right to ask any question he saw fit, and that the defendant had the right to object thereto, and that thereupon, defendant took the witness stand, and the district attorney, over the objection of defendant, proceeded to question him on cross-examination about said prior offense, and others still more remote, the same was reversible error; especially where the private prosecutor alluded to such testimony in his argument.

**3.—Same—Rule Stated—Practice in District Court—Inadmissible Testimony.**

The trial court has the right to prohibit the district attorney to ask a question about a matter which both he and the district attorney know is inadmissible as evidence, and his failure to do so in the instant case is reversible error. Following Vick v. State, 71 Texas Crim. Rep., 50.

**4.—Same—Rule Stated—Prosecuting Officer.**

Prosecuting officers should never attempt to get before the jury testimony they know to be inadmissible, and should not let their zeal get the better of their judgment.

**5.—Same—Argument of Counsel—Private Prosecutor.**

Where, upon trial of assault to murder, there was no evidence in the record that prosecutrix had brought a suit for divorce against defendant, or that defendant and prosecutrix had separated four years before, on account of his drinking, and defendant had made timely attempts to keep out of the record the fact that he had been indicted for killing a man some fourteen years prior to the instant trial, and such testimony was inadmissible, although admitted, the remarks of private prosecutor in regard thereto were highly improper, and the objections thereto should have been sustained, and the same was reversible error, although no written instructions were requested.

**6.—Same—Suspended Sentence—Practice on Appeal.**

Where the question of suspended sentence only appeared on the motion docket, a qualification by the trial court in the bill of exceptions that an application for suspended sentence had been filed could not be considered by this court in the absence of such application in the record, and the submission of same to the jury.  Following Leonard v. State, 53 Texas Crim. Rep., 87.

**7.—Same—Record on Appeal—Suspension of Sentence.**

Where, upon appeal from a conviction of assault to murder, the court's motion docket showed an application for suspended sentence, but there was no entry on the minutes of the court, or charge thereon, and the clerk's transcript on certiorari stated that he had no recollection of filing the same, and there was no order on record of its withdrawal, and said court's docket showed that if the plea was filed it was filed on the same day that the verdict was rendered, and the record· further showed that the trial of the case occupied two days, this conclusively showed that said plea for a suspended sentence, if it was filed, it was not filed in time, and could therefore not be reviewed on appeal.

**8.—Same—Rule Stated—Practice on Appeal—Court Docket.**

This court can only consider orders which appear in the minutes, and can not consider entries which only appear on the docket of the trial court; however, where the district attorney insisted that an application for suspension of sentence had been filed in the lower court, and that this court had overlooked the same, a writ of certiorari was granted to bring all the orders and entries of the lower court before this court to correct any wrong that may have been done him, etc.; however, in the decision of this case, it is immaterial. whether such application for suspension of sentence had been filed or not.  See opinion for statement as to conduct and admissions of district attorney, and that this court had no intention to question his motives.

**9.—Same—Suspended Sentence Law—Rule Stated.**

Where, upon trial of assault to murder, the prosecuting attorney claimed that an application for suspension of sentence had been filed by the defendant, and afterwards withdrawn, and that questions on prior offenses were proper, yet the record showed that no such application had been filed; held, that even if the same had been filed the law will not permit testimony about prior offenses which are too remote in time to be introduced in evidence, in order to show moral turpitude, unless there is evidence showing a continuity of criminal acts, and testimony of an offense committed fourteen years prior to the instant trial was inadmissible for any purpose, and it is unnecessary to pass on the disputed issue as to whether an application for suspension of sentence was filed or not.  Following Vick v. State, 71 Texas Crim. Rep., 50, and qualifying Williamson v. State, 74 Texas Crim. Rep., 289, 167 S. W. Rep., 360.

**10.—Same—Stating Facts in Opinion—Practice on Appeal.**

Where the State contended that the bills of exception, complaining of the remarks of State's counsel were insufficient to bring the question before this court for review, and that they did not show there was no testimony to justify the remarks of private prosecutor, yet the record bore out the original opinion of the court in this matter, there was no reversible error, and this court can alone pass upon the record on matters assigned as error therein, and can not consider matters outside of same.

Appeal from the District Court of Fannin.  Tried below before the Hon. Ben H. Denton.

Appeal from a conviction of assault to murder; penalty, eight years confinement in the penitentiary.

The opinion states the case.

*Cunningham & McMahon,* for appellant.—On question of argument of counsel: Lyon v. State, 42 Texas Crim. Rep., 506; Johnson v. State, 46 id., 291; Newcomb v. State, 49 id., 550; Knight v. State, 55 id., 243.

On question that counsel for State shall not argue matters not sustained by the evidence: Kirksey v. State, 61 Texas Crim. Rep., 641, 135 S. W. Rep., 125; Ross v. State, 60 Texas Crim. Rep., 547, 133 S. W. Rep., 688; Smith v State, 55 Texas Crim. Rep., 563.

On question of inflammatory argument by State's counsel: Exon v. State, 33 Texas Crim. Rep., 461; Gazley v. State, 17 Texas Crim. App., 267; Setvison v. State, 48 Texas Crim. Rep., 601.

On question of arguing other offenses by State's counsel: Wyatt v. State, 58 Texas Crim. Rep., 115; Robbins v. State, 47 id., 312; Hardin v. State, 131 S. W. Rep., 552.

On question of argument of State's counsel when obviously improper, not necessary to ask a charge: Wright v. State, 93 S. W. Rep., 548; Leech v. State, 139 S. W. Rep., 1147.

On question where it is clearly apparent that defendant has been prejudiced, not necessary to except: Lankster v. State, 43 Texas Crim. Rep., 298; Trotter v. State, 37 id., 468; Hamblin v. State, 41 id., 135; Brown v. State, 42 id., 176

*C. C. McDonald,* Assistant Attorney General, and *R. T. Lipscomb,* District Attorney, for the State.—On question of argument of counsel: Hatchell v. State, 47 Texas Crim. Rep., 380; Felder v. State, 127 S. W. Rep., 1055; Hilcher v. State, 131 S. W. Rep., 592; Branch on Crim. Law, sec. 52.

HARPER, JUDGE.—Appellant was convicted of assaulting his wife with intent to kill her, and his punishment assessed at eight years confinement in the State penitentiary.

Appellant in his brief and able oral argument before this court seems to rely mainly for reversal of this case on the ground that the court erred in overruling his motion for new trial, because of alleged newly discovered testimony. We do not deem it necessary to discuss this ground, as the case will be reversed on other grounds, and it certainly will not be newly discovered on another trial.

The most material error, as we view the record, is shown by those bills which complain about the court permitting the prosecuting officers to inquire about the indictment of appellant (it being too remote) and the argument of prosecuting counsel in his closing address in regard to this matter, and comment upon matters not in evidence. In the first bill of exceptions it is shown:

"Be it remembered that upon the trial of the above entitled and numbered cause, and before the defendant had *took* the stand to testify in his own behalf in this case, that defendant's attorneys stated to the court and to the district attorney in the presence of the court that the defendant had fourteen years prior to this trial been charged with the offense of murder and tried in this court and found not guilty by a jury,

and had never since then been charged with any offense and had lived
in Fannin County during all of such time since such trial, and sub-
mitted to the court that such prosecution was too remote to be offered
in evidence in this case as against him and could be offered for no
other purpose than to put him in an improper light before the jury, as
the facts were that he was justified in killing and necessarily had to
kill his assailant at such time, and asked the court to instruct the
district attorney that such former charge was not admissible for any
purpose against the defendant and that the State could not and would
not be permitted to inquire into same; and the *court thereupon stated
that it was too remote to be admitted in evidence against the defendant,*
but that the State's attorney had the right to ask any question he saw
fit and the defendant's counsel had the right to object to such questions
when asked and he would pass upon them at the time; and the district
attorney thereupon stated that *he knew such evidence was not admissible*
but that if we did not want it in we could object to such evidence; and
defendant's attorneys thereupon told the court and the district attorney
that they reserved then an exception to any conduct of the district
attorney in asking about such charge when he took the stand in his
own behalf.

"And thereupon the defendant took the stand in his own behalf, and
while testifying on cross-examination the district attorney asked the
defendant the following question: 'Q. Mr. Bullington, I will ask you
if you have not been charged prior to this time with a felony; that is,
if you have not been charged with murder?' And the defendant an-
swered, 'Yes.' And the defendant's attorney thereupon renewed such
objections to the court and stated that they would not object to de-
fendant answering since the district attorney had made such insinuation
before the jury and that they wanted him to answer it all, and then
and there duly excepted to the action of the court in permitting the
district attorney with such notice in propounding such question and
injecting that matter in this case when it could have nothing to do with
it, for the reason that it was too remote, being more than fourteen
years before; did not involve moral turpitude and threw no light on
this case, and because the same was injected into the case for the sole
purpose of trying to influence the jury and prejudicing the jury against
the defendant.

"And defendant here tenders this his bill of exception No 1, etc."
In approving the bill the court says:

"The above bill has been presented to me and given with the follow-
ing explanation, that while the case was being tried, but not while the
evidence was being taken, just before defendant took the stand, counsel
for defendant in my presence and the presence of the district attorney,
said that Bullington had been tried and acquitted in that court about
fourteen years ago, and he didn't want the district attorney to be asking
defendant about that. I told him I thought it too remote, but I could not
pass on it until it come up to me; that I thought the district attorney had
the right to ask any question that he wanted to and that the defendant

could object and then I would pass on it, and the defendant's counsel then said we want to take a bill of exceptions, as the matter is too remote and could not effect the defendant. The question and answer set out above in the bill was not the question asked by the district attorney nor the answer of the defendant. The question asked was as follows: 'Mr. Bullington, I will ask you if you have not been charged prior to this time with a felony?' Defendant answered: 'I refuse to answer.' Counsel for the defendant then made the following statement: 'Your Honor, I am going to object since he has made the insinuation before this jury. I want him to answer and answer it all, but I take an exception to the action of the district attorney in injecting a matter in this case that has nothing to do with it, that does not involve moral turpitude and would throw no light on this case and injected for the sole purpose of trying to influence the jury and prejudice them against the defendant, and I take a bill of exception to it.'

"Then after counsel for the defendant made the above statement the district attorney asked the following question: 'You have been charged with a felony before, haven't you?' And defendant answered, 'Yes, sir.' Then the district attorney asked: 'Been charged with murder, have you not?' and defendant answered: 'Yes, sir.' Then the district attorney asked the following question: 'You have been charged with murder more times than one, too, haven't you?' Defendant answered, 'No, sir.' Then the district attorney asked, 'I will ask you if you was not charged with murder in Bell County?' Defendant answered, 'No.' Then the district attorney asked: 'I will ask you if you was not charged with murder in Tennessee before you came out here?' And the defendant answered, 'That don't concern you.'

"The questions and answers were asked and made one right after the other, as above indicated. And nothing done, except as set out in this explanation, except defendant excepted to each question. In this case the defendant had filed an application to submit to the jury the question of suspended sentence, and the same was put on the motion docket and the motion of the defendant was granted by me. Signed, Ben H. Denton, judge."

It is seen the court apparently did not think he had the right to prohibit the district attorney to ask a question about a matter about which both he and the district attorney knew was inadmissible as testimony. In this, the court was in error. In Vick v. State, 71 Texas Crim. Rep., 50, this court said in passing on a similar assignment of error:

"The court was clearly in error when he stated in effect there was no rule of law giving him authority to require or instruct the county attorney not to ask appellant about the former conviction. The court not only had the power and authority to do so, but it was without doubt his duty to do so, and not only should he have instructed and required the county attorney not to ask said questions, but he should have used the whole power of the court to enforce his instructions. And if under such circumstances the county attorney still persisted and asked or

attempted to ask such question, the court should have inflicted such immediate and severe punishment as would not only deter him, but any other prosecuting officer in future to desist. Appellants, however guilty, or for whatever crime charged, have the right to a fair and impartial trial and they have the right and it is the duty of the court and the prosecuting officers to see that improper evidence is not admitted or attempted to be introduced."

Prosecuting officers should never attempt to get before the jury evidence they know to be inadmissible. This bill shows that the officer said he knew the evidence was inadmissible, but, nevertheless, he would make an attempt to get it before the jury. The district and county attorneys are officers of the State, and sometimes they seem to misconceive their duties, and think it their duty to secure convictions by any possible means, and because of this tendency on their part it has brought up the question of whether or not it is the duty of the State to provide another officer—a public defender. In olden times it was considered, and the true theory is, that the trial judge and district attorney are officers of the State whose duty it is to see that each party charged with crime is given a fair and impartial trial under the law, and this each officer of the law ought to use his best endeavors to see is done. Prosecuting officers should not let their zeal get the better of their judgment: They have a higher duty to perform than the mere securing of convictions—a duty to see that each man tried is tried in accordance with the rules of law and no improper advantage is taken of anyone, no matter with what crime he is charged, nor how guilty he may be believed to be.

In other bills it is made to appear that Mr. Baldwin, private prosecutor, in the closing address to the jury, said: "The defendant was guilty of the killing fourteen years ago and escaped punishment then, and was attempting to get out of this case in the same way, but that dead man's blood was on his hands; that they should convict the defendant and give him a severe penalty because he was experienced in crime and in defending murder charges, and when he shot his wife he had been so successful theretofore he thought he could kill her and come clear; that defendant and prosecutrix had separated four years before on account of his drinking, and the thing that caused the separation caused him to shoot and attempt to kill prosecutrix; that they should convict and give defendant a severe punishment, as prosecutrix had brought suit for divorce alleging as her sole ground for divorce that defendant had made an assault on her with intend to murder her, and if they did not convict him she would have to live with him as she had no other place to go; that he would be madder still at her than he was when he shot and tried to kill her, and that he would continue to get drunk and harass her, and he would tell her every day of his life that he had killed a man and gotten out of it; that he had shot her and got out of it; that a jury had turned him loose and that this jury, if they turned him loose, would leave her at his mercy to be mistreated and bull-dozed during the balance of her life."

There was no evidence in the record that prosecutrix had brought a suit for divorce; there was no evidence in the record that defendant and prosecutrix had separated four years before on account of his drinking. These were matters injected into the case by argument of counsel without any foundation therefor in the evidence. Then, again, appellant had timely attempted to keep out of the record the fact that he had been indicted for killing a man some fourteen years before, but had not succeeded in doing so apparently. Such testimony was inadmissible and the remarks of counsel in regard thereto were highly improper and the objections made thereto by appellant should have been sustained. The only explanation of the bills by the court is that counsel asked no written instructions in regard thereto. It was proper for counsel to have done so, and he should have done so, but in this instance the remarks are so inflammatory and being also about matters which have no foundation in the record, we are of the opinion that they were of that character as to present reversible error, even though no written instructions were requested. Especially is this true when we consider the punishment assessed against appellant and that prejudicial testimony was injected into the record over timely objection. The rule is that if the remarks are of such character that instructions not to consider same would not remove from the minds of the jury the prejudicial and harmful effect of the argument, it will present error, even though no written charge was requested, if the objection to the remarks is timely made, and the court refuses to stop counsel.

There are other matters complained of in the record, but we think none of them present error.

Reversed and remanded.

*Reversed and remanded.*

ON REHEARING.

December 8, 1915.

HARPER, JUDGE.—The State has filed a motion for rehearing in this cause, insisting that we erred in reversing the case, and calling our attention to the fact that the court in his qualification to the bill copied in the original opinion stated, "The defendant had filed an application to submit to the jury the question of suspended sentence and the same was put on the motion docket, and the motion of the defendant was granted by the court." In the original opinion we did not discuss this paragraph of the qualification, for the reason that the record before us contained no application for a suspension of sentence, and the court in his charge did not submit that issue to the jury. The record being in that condition, we thought perhaps the court had some other case in mind when approving the bill, for if an application for a suspension of sentence had been filed, it should have been embraced in the record, and the court in his charge should have submitted it to the jury. However, in the motion for rehearing State's counsel insists that such motion

was filed, and states that was his reason for inquiring into the former charge against appellant, although remote, and thought this court had so held in an opinion written by the writer in Williamson v. State, 74 Texas Crim. Rep., 289, 167 S. W. Rep., 360.

In the case of Leonard v. State, 53 Texas Crim. Rep., 187, this court, speaking through Judge Ramsey, held a court could not qualify a bill by inserting in his qualification matters outside of the record. Judge Ramsey said, in speaking of a qualification of a bill by the trial judge: "We have, as we should have, great respect for any finding of fact by the trial court, and if there was any evidence to support such finding, we would not hesitate to uphold the conclusion of the trial judge, but in view of the record, with no statement to support the finding, we can scarcely bring ourselves to believe the opinion of the trial court on this question is supported by the record." Under this rule of decision, with no application for a suspension of sentence in the record, the charge of the court not submitting that issue, there was nothing in the record to support the qualification, therefore we did not discuss it. But as the State insisted in the motion for rehearing an application for suspension of sentence was filed, the court ordered the clerk of this court to issue a writ of certiorari commanding the clerk of the District Court of Fannin County to send up without delay a perfect transcript of the record in said cause, incorporating the application for a suspension of sentence filed in said cause (if any filed) and all other pleadings and orders had in said cause, and which were not included in the transcript heretofore filed in this court in this case. In answer to the writ the clerk filed an answer, and a supplemental answer. In the original answer the clerk states:

"(1) That in making up the transcript in the above cause I put in all the matters in the case that I could find of record or file, except as shown by this certificate.

"(2) That there is no application with the papers for a suspension of sentence, but defendant swore to same before me and I filed it.

"(3) There is on the criminal motion docket of this court the following entries on page 82, criminal motion docket No. 1:

| No. | Attorneys. | Style of Case. | Nature of Motion. |
|---|---|---|---|
| 8763. | Cunningham & McMahon. | The State of Texas vs. Frank M. Bullington. | Defendant's Motion to Suspend Sentence. |

and on the opposite page, 82, the above entries continuing are as follows:

| Date of Motion. | | | |
|---|---|---|---|
| Month. | Day. | Year. | Disposition of Motion. |
| March | 2, | 1915. | March 2, 1915—Motion granted. |

"That said entries are in the handwriting of L. L. Peterson, clerk of this court, except the entry 'March 2, 1915—Motion granted,' which is in the handwriting of Hon. Ben H. Denton, judge of this court."

In the supplemental answer the clerk adds:

"That I have no recollection of seeing an application for the sus-

pension of sentence in the papers in the above cause; I remember swearing the defendant to such an application but have no independent recollection of whether I filed it or not, but I must have filed it or it would not be on the motion docket; that my records show the same entry in the motion docket in every case where the suspended law is applicable that has been tried in this court since such suspended law has been in force; that in only one case does the record show that during the progress of such trial was such application for suspended sentence withdrawn, and in that case the court required the attorneys for the defendant to make written application for the withdrawal of such motion, and such motion for withdrawal was put on the motion docket and the court by order granted same; that no such order and record appears . in this case and I have never seen a motion in the above case asking for the withdrawal of such issue."

It is seen that the above record shows the plea to have been filed on March 2nd, and the verdict was rendered on March 2nd. The clerk certifies that the case occupied two days time in its trial, so the plea was not filed on the first day, or before beginning of the trial, but on the day the verdict was rendered.

The above facts are stated that the contention of each of the parties may be understood. The district attorney, Mr. Lipscomb, in his argument on the motion for rehearing, says:

"The trial judge and the district attorney, it seems, have been very badly mistreated in this case in that from what took place in the case it seems that Judge Harper and the court took statements and contentions of defendant's counsel in the place of the record and the true facts in this case. And in this connection we wish to state that the defendant filed an application for suspended sentence and that the record in the case shows it and then, when the case gets before this court it seems that defendant forgets even having filed the same and contend that no such application was ever filed. The true facts in the case are that the application was filed and that it was kept from the prosecution during a greater part of the trial of the case, and that when it was discovered by the prosecution the defendant and his counsel withdrew the application from the papers in the case and from the case, but that that was after the defendant was on the witness stand and after the questions asked by the district attorney had been asked. We do not charge that the attorneys for the defendant wilfully attempted to mislead this court, but we do insist that the explanation to the bill of exceptions and the record in the case as it now is, and the true facts establish the fact that the defendant's counsel were in error when they charged, if they did, that there was no application for suspended sentence filed and that the trial judge was using statements in his explanation to the bill of exceptions that were not the fact"

Messrs. Cunningham and McMahon, attorneys for defendant, in their answer most emphatically deny that an application for a suspension of sentence was filed in this case. They say:

"We stated that the record showed that the suspended sentence issue

was not in the case, and we insist that it was not, for the following reasons:

"1. If it was in the case why didn't the court or the district attorney suggest that this evidence was admissible for that purpose instead of admitting that they knew it was not admissible? One of two things is true, that they knew it was not there or they have had a change of heart as to the law on this point.

"2. The supplement to the transcript shows that this entry is merely on the motion docket and that the court's order thereon was never written up in the minutes. We have asked the clerk to send in a second supplement, giving all of the facts. This second supplement shows that in every case that has been tried since the suspended sentence law has been in effect these same entries appear on the docket. The truth is, as shown by these supplements, that our mechanical clerk made these entries in every case whether applied for or not. If the district judge and district clerk can be convinced that they are not a part of the prosecution, then the defendant may have a chance at a fair trial and an opportunity to get a record that is not distorted before this court. The district clerk volunteered his opinion that the motion was filed or it would not have been docketed; and the district attorney in his letter stated that it was, but didn't state it when he admitted that the testimony was not admissible. As they have given their opinions and go out of the record I will tell the court what the true facts are, but do not expect the court to consider this statement, as it is out of the record and only in answer to them. When we were asked for an announcement my co-counsel came to the writer and asked him whether he thought we should file an application for suspended sentence. I stated if they convicted the jury would not suspend and that the application would prejudice the case and we decided not to file one. The district clerk may be correct in saying that he swore the defendant to one, but his conclusion that he filed it, when he admits he has no recollection of it, is not correct.

"3. The suspended sentence law provides that the application shall be filed before an announcement of ready. The court knows from the size of the record in this case that it took more than one day to try it. The second supplement to transcript shows that it took two days to try the case, as the talesmen who were picked up to try this case served two days on it. Now, if an application for suspended sentence had been filed it would have been filed on the first day of the trial or before the trial began. The judgment shows that it was rendered on March 2, 1915. This mysterious entry on the motion docket shows that it was made on March 2, 1915, the same day that the judgment was rendered and was never written up on the minutes. If it had been filed it would have been filed on March 1, 1915.

"4. If this motion had been filed the court would necessarily have had to charge on it unless we withdrew it. The court does not say that we withdrew it, because we did not, and the second supplement to the transcript shows that in the only case where one was withdrawn that

the court required a motion to withdraw and, an order duly entered thereon withdrawing same."

We have copied these matters to show the contention of both State's counsel and defendant's counsel. The answers to the certiorari by the clerk would show that the clerk is positive an application to suspend sentence was sworn to, but the clerk is not so positive that same was filed, but is of the opinion it was. However, the clerk can not find the application, and only shows a docket entry on the motion docket, which was not carried forward in the minutes. It has been held frequently that the court can only consider orders which appear in the minutes, and we can not consider entries which only appear on the dockets of the court. Long v. State, 3 Texas Crim. App., 321, and cases cited in Offield v. State, 61, Texas Crim. Rep., 340, 135 S. W. Rep., 566.

But we think it immaterial, in the decision of this case, whether or not an application was filed, and have merely made the above full statement as counsel for the State insists that in the original opinion the trial judge and the district attorney were badly mistreated, and if so we want the record to speak and correct any wrong the opinion may have done them or either of them. The writer certainly thinks the trial judge was in no way mistreated in the original opinion. In the bill it is recited, "that when appellant made the request, before taking the witness stand, that counsel for the State be instructed not to question him about the return of an indictment some fourteen years prior thereto, as it was too remote to be admissible, the trial court stated such evidence was too remote to be admissible, but that he would permit the question to be asked." In approving the bill the court says: "Just before the defendant took the stand, counsel said that Bullington had been tried and acquitted in that court about fourteen years ago, and he didn't want the district attorney to be asking about that. I told him I thought it too remote, but I would not pass on it until it come up to me." We merely held that the trial court was in error in so holding, citing the authorities. That if the objection was timely made, as in this instance, and he held the testimony inadmissible, he should sustain the objection and not let the inadmissible testimony be brought before the jury. If we can not correct the errors of the trial court, then we have no function to perform. Certainly by saying the trial court was in error is in no way badly mistreating him, for in his qualification he says he held that the testimony was too remote, yet he permitted the district attorney to bring the matter before the jury and ask questions in regard to testimony he held too remote to be admissible. The judge's view that he could not and would not instruct the district attorney not to ask questions in regard to inadmissible testimony was an incorrect view, and has so been held in a number of instances, and it was our duty to call his attention to this incorrect view of the law that the same error might not be committed in the trial of other cases.

As to our "badly mistreating" the district attorney, we had no such intention and no such thought. If, as recited in the bill, after the judge had said the testimony was too remote, yet he would not instruct

the district attorney not to ask the questions, the district attorney said, *"he knew such evidence was not admissible,* but if counsel for appellant did not want it in they could then object to such evidence," and with that knowledge had sought to elicit testimony he knew to be improper and inadmissible, all that was said in the original opinion should have been said, and district attorneys cautioned not to let their zeal get the better of their judgment. We attributed nothing improper to the district attorney, and the remarks could not be considered as "badly mistreating him," and we had no such thought, but were endeavoring only to rule so emphatically that such errors would not occur again. However, in justice to the district attorney we want to say that he contends most vigorously that he made no such remark, and at the time he asked the question he thought the testimony admissible, and if he did not admit he knew the testimony to be inadmissible, then a portion of the original opinion should not have been written, for that portion of it would have no application to the record. But at the time the original opinion was written all we had before us was the record containing the bill copied in the original opinion, and did not know the district attorney contended the bill did not recite the facts correctly. The trial judge in qualifying the bill, as he did, in no way qualified that statement in the bill, and if it was incorrect in reciting that the district attorney had made such admission and remark, as he qualified the bill in other respects, we naturally concluded that if the recitation was incorrect, he would in his qualification also have qualified that statement in the bill. It is commendable in the district attorney to seek to elicit all the testimony he believes to be admissible, and if he thought this testimony admissible, he should not and we would not under such circumstances criticise him, even if we should hold that he was wrong in his contention, as we do in this case. And that the original opinion may not go in the books as written without the contention of the district attorney, and the grounds of his contention being known, is why we have set forth the matters so fully, for we have the highest regard and esteem for the district attorney, Mr. Lipscomb; think him an able and zealous officer, yet this should not and would not keep us from holding that error was committed, if error had been committed. Mr. Lipscomb not only contends that he did not admit he knew the testimony was inadmissible, but he says he contended, and he, in this motion for rehearing, contends that said testimony is and was admissible, if a plea was filed asking for a suspension of sentence, and cites us, as hereinbefore stated, to the case of Williamson v. State, 74 Texas Crim. Rep., 289, in which the writer of this opinion said in discussing the suspended sentence law, "when one elects to file this plea asking for clemency, if found guilty, the law puts in issue his past reputation, and evidence of the character of life he has lived in the past is admissible to enable the jury to determine whether or not the clemency should be extended." If the use of this expression led the district attorney to believe that we were overruling or changing the rule laid down in the case of Winn v. State, 54 Texas Crim. Rep., 538, we were indeed unfortunate in the

use of language. We did not intend to abridge the rule there announced. "In other words, the law will not permit the early indiscretions of a witness to be brought into requisition to besmirch and becloud his subsequent life if his later life has been upright. To do so, as expressed by Judge Greenleaf, would be to preclude any possible chance of reform, and would enable State's counsel to parade early misdeeds of a subsequently useful life to be introduced to becloud and discredit the subsequent honorable and useful life." This expression is peculiarly applicable to the recitals of the bill in this case. It reads: "Defendant's attorneys stated to the court and to the district attorney in the presence of the court that the defendant fourteen years prior to this trial had been charged with the offense of murder, and tried in this court and found not guilty by a jury, and *had never since then been charged with any offense* and had lived in Fannin County during all of such time since said trial." Under all of our decisions, if he had lived an upright life for fourteen years immediately preceding his trial, this testimony would be too remote whether sought to be used to discredit him as a witness or to affect his character as a man. Not only would such testimony be too remote, but also it would be improper to reach back some thirty years or more and ask if he had not been charged with an offense in Tennessee before coming to Texas. There is but one instance where these remote transactions become admissible, and the rule is stated in Oats v. State, 67 Texas Crim. Rep., 488, that is where the State can show continuous criminal conduct up to and including the time of the commission of the offense for which he is on trial. If fourteen years had elapsed, in which appellant had been charged with no offense, then the State should not be permitted to reach back beyond that and go back thirty years in an effort to discredit him as a man or as a witness. If the district attorney gathered from the Williamson case that we held when an application for a suspension of sentence is filed, that the State can reach from the cradle to the grave, in an effort to discredit the defendant, we want to say now we intended no such holding. If a man for a number of years has lived an upright, creditable life, his early indiscretions can not be inquired into. If, on the other hand, his life has been one in which he has so lived as to be almost continuously charged with crime, the State can reach as far back as this continuous course of evil conduct has been continued. The writer thought he had made his views plain in Vick v. State, 71 Texas Crim. Rep., 50, wherein he said: "I am of the opinion that unless there is other evidence showing a continuity of criminal acts, a conviction had more than seven years prior to the commission of the offense for which he is on trial would be too remote and should not be admitted." But, as the district attorney claims, if the evidence of offenses committed fourteen years ago is not admissible, he was misled by the opinion in the Williamson case, and, therefore, not subject to the criticism contained in the original opinion, we have gone into the matter fully that no one else may be misled thereby, and perhaps if the language we used in the Williamson case, supra, misled the district attorney, the criti-

cism addressed to his action in the original opinion should be addressed to the writer for not using more appropriate language in the Williamson case. And inasmuch as we held that the testimony, under the record before us, was inadmissible, even though a plea asking for a suspension of sentence had been filed, it becomes unnecessary for us to pass on the disputed issue of whether or not one was filed in this case,. but merely state the facts as we have done, that no one may be mistreated by the original opinion.

The State also contends that the bills of exception complaining of the remarks of counsel are insufficient to bring the question before us for review; that the bills do not *"show there was no testimony, or lack of testimony"* to justify the remarks. One of the bills (No. 11) states, "because the argument was out of the record, and because there was no evidence as to defendant's reputation and nothing in the record that the State could show a bad reputation," etc. No. 12 says the defendant objected "because the attorney was out of the record, and there was no evidence in the case to justify any such argument," etc. No. 9 reads. that the argument was objected to "because the attorney was out of the record, and because there was no evidence as to the separation mentioned in the argument," etc. No. 8 objects to such argument because same was not in the record, etc. No. 10 objects because such argument was out of the record, and because such statement was not the law, etc. We think the objections sufficient to bring the matters before us for review. They state the argument used, and the objections made, and the court by his approval certifies that such argument was used and objections made. Bill No. 8 is qualified by stating it was in evidence that defendant had been tried for murder fourteen years prior thereto.. This qualification only emphasizes the fact that the court should have sustained appellant's objections to this testimony when he timely made the objection to it. To two of the bills the court does say that the remarks were in reply to argument of defendant's counsel, and this correction we cheerfully make as State's counsel requests it. But to two others, the only reason given is that appellant's counsel requested no charge in writing, but admitting that exceptions were reserved and oral request was made to instruct the jury not to consider such remarks.. State's counsel insists that there was evidence introduced on the trial to authorize some of the remarks, but says: "We do not contend that. the statement of facts contain all these little matters." If the record that is sent us does not contain evidence that was adduced, be it big or little, we have no knowledge of it, for it is by the record alone we pass on the matters assigned as error in the record. If there was evidence to justify the remarks, it should have been included in the record,. else we must presume that the record signed and agreed to by counsel and approved by the court correctly presents the matter.

The motion for rehearing is overruled.

*Overruled..*