CAIN ANDERSON v. THE STATE.

No. 12388. Delivered October 30, 1929.

The opinion states the case.

*Gentry & Gray* and *Nat Gentry, Jr.,* of Tyler, and *Wynne & Wynne* of Wills Point, for appellant.

*A. A. Dawson* of Canton, State's Attorney, for the State.

CHRISTIAN, JUDGE.—The offense is unlawfully disturbing inhabitants of a private house; the punishment confinement in the penitentiary for eight years.

The private residence of J. H. Richardson was entered at night by four masked men, who took Richardson and his wife from their home and whipped them. Upon investigation being made by the authorities, the injured parties declared that one of their assailants was D. Osborn. At this time they failed to bring accusation against appellant. Several days later, after having made a written statement to the county attorney in which they failed to name appellant, they stated that appellant was among the masked men entering their home. They said that they had been afraid in the first instance to name appellant as one of their assailants. Prior to appellant's trial D. Osborn pleaded guilty and served a term in the penitentiary. On the present trial, testifying as a witness for appellant, Osborn denied that appellant was present when the offense was committed, and declared that appellant was not connected with the perpetration of the offense in any manner. Testifying in his own behalf appellant denied participation in the offense and declared that he was at home at the time the offense was committed. Other witnesses, including members of appellant's family, supported the theory that appellant was at another and different place when the offense was committed. The state relied in chief almost entirely upon the testimony of Richardson and his wife. Opposing appellant's defensive theory the state offered in rebuttal witnesses who testified that on the night Richardson and his wife were whipped four masked men entered the home of Willie Straps and whipped Straps and his wife. The home of Straps was near that of Richardson. Straps and his wife testified that appellant was among the masked men entering their home. Having made the foregoing brief statement of the evidence, we observe that the issue of guilt was closely contested.

The indictment contained five counts. Only the fifth count was submitted to the jury. It was charged in said count that appellant " * * * did then and there unlawfully disturb the inhabitants of the private house of J. H. Richardson, the said Cain Anderson being then and there masked and disguised in such manner as to render his identity difficult to determine * * *."

Section 3, of Chapter 63, of the Acts of the Thirty-ninth Legislature at its Regular Session reads as follows:

"If any person who is masked or disguised in such manner as to hide his or her identity, or as to render same difficult to determine shall go into or near any private house, or shall demand or seek entrance therein or disturb any of the inhabitants thereof, he shall be guilty

of a felony and upon conviction thereof shall be punished by confinement in the penitentiary for a term of not less than one nor more than ten years; provided this article shall not apply to persons attending social gatherings in private homes where social custom sanctions the wearing of a mask or disguise."

The validity of this statute was assailed in a motion to quash the indictment, it being averred that it is so "indefinite and vague and so indefinitely and vaguely framed that no defendant can know what act or conduct would constitute a violation of said section of the act."

The term "masked" has a well-defined and commonly understood meaning. To denounce the disturbance of the inhabitants of a private house by one who is masked would seem to definitely and clearly describe an offense against the penal law in a manner not obnoxious to Section 10 of Article 1 of our Constitution, wherein every citizen is guaranteed the right to know the nature and character of the accusation against him. Again the provisions of Article 6 of our Penal Code would not be offended against. We quote said article as follows:

"Whenever it appears that a provision of the penal law is so indefinitely framed or of such doubtful construction that it can not be understood, either from the language in which it is expressed, or from some other written law of the state, such penal law shall be regarded as wholly inoperative."

That part of the statute attempting to make it an offense to disturb the inhabitants of a private house while disguised in such manner as to render the identity of the offender difficult to determine is in our opinion so indefinitely framed that it offends against the provisions of article 6, supra. Whether the act be criminal is made to depend largely upon the peculiarities that may affect the vision of the person or persons offended. The disguise is not described by any standard that is certain. No rule is fixed for determining when the wearing of the disguise under the conditions stated in the statute shall be prohibited by the act. Ex parte von Koenneritz, 261 S. W. 570; Ex parte Slaughter, 243 S. W. 478; Griffin v. State, 218 S. W. 494.

It does not follow that the section of the act under which the indictment was drawn is invalid in its entirety. It was the declared intention of the Legislature, as expressed in Section 7 of the Act, that if any article or part of the Act should be held invalid such holding should not affect or invalidate any other article or part

thereof. Unless the term "masked" is modified by the succeeding provisions of the statute it is an offense for any person who is masked to go into or near any private house or demand or seek entrance therein or disturb any of the inhabitants therein. We are of the opinion that the terms "in such manner * * * as to render (the identity of the offender) difficult to determine" refer to the term "disguise" and do not relate to or in any manner modify the term "masked." Thus construed the validity of a part of the section of the Act under consideration can be sustained. The Act may admit of another construction. However, it is the announcement of the decisions that where a statute admits of two constructions, one which renders it unconstitutional and one constitutional, the latter construction should be given it. Madden v. Hardy, 92 Texas 613, 50 S. W. 926; Railway Company v. Gross, 47 Texas 428. Applying the rule thus announced, we are of the opinion that the section of the Act under consideration is not invalid in its entirely.

We are not concerned with the question as to whether the indictment is duplicitous, or whether several ways of committing one offense were properly charged conjunctively in the same count in the indictment. No motion to quash the indictment on the ground of duplicity was made. Hence the question is not before us for review. Melley v. State, 248 S. W. 367, and authorities cited. The question here is: Is the indictment sufficient to charge the offense? This question must be answered in the affirmative. The allegations relative to appellant being in disguise in such manner as to make his identity difficult to determine are not descriptive of that which is legally essential to the validity of the indictment and may be rejected as surplusage. King v. State, 19 S. W. (2d) 52; Branch's Annotated Penal Code of Texas, sec. 497. It follows that appellant's motion to quash the indictment was properly overruled.

As disclosed by bill of exception No. 3, the state introduced an indictment charging appellant with murder, the purpose of the introduction of such testimony being to discredit appellant as a witness. Appellant sought to make an explanation of facts and circumstances within his knowledge which would militate against the imputation of untruthfulness coming from the introduction of the indictment against him. This explanation he sought to give in person, making no effort to introduce evidence upon the matter other than his own. If appellant had been permitted to make such explanation he would have testified that more than twenty years be-

fore his present trial, while he was still a young man, two men jumped on his father, threw him to the ground, assaulted him and cruelly beat him; that coming upon the scene of the difficulty he, appellant, engaged in the defense of his father and while so engaged killed one of the assailants; that he was thereafter tried for murder and convicted for manslaughter. Being a witness and discredited by the indictment, appellant should have been permitted to give testimony of such explanatory circumstances in connection with the matter inquired about by the state as would tend to rebut the idea conveyed thereby that he was unworthy of belief. However it is not to be inferred that appellant had the right to introduce evidence other than his own. Skinner v. State, 251 S. W. 810; Miller v. State, 294 S. W. 582; Tippett v. State, 39 S. W. 120. In the light of the record the denial of his legal right to make the explanation was prejudicial and constitutes reversible error.

On cross-examination by the state, appellant was asked if he had not requested one Hughes to pay the state's witnesses a certain sum of money to leave the country. Appellant denied that he had attempted in any manner to bribe the state's witnesses. Hughes testified for the state that he, at appellant's request, had attempted to bribe the witnesses to leave the country. Over proper objection, appellant was required to testify that he was then under indictment for attempting to bribe witnesses. As bearing on the issue of guilt, it was proper for the state to prove that appellant had attempted to bribe the state's witnesses. But it was improper for the state to place before the jury the fact that a grand jury had indicted him for attempted bribery of such witnesses. To allow this would be permitting the state to throw the weight of the influence of the grand jury in favor of the testimony of Hughes and against the testimony of appellant on the issue as to whether he had attempted to bribe the witnesses. In effect the state was permitted to introduce in evidence the opinion of the grand jury that appellant was guilty of attempted bribery. See Brown v. State, 254 S. W. 995; Bennett v. State, 81 S. W. 30.

On cross-examination, the state elicited from appellant that he had been indicted for murder more than twenty years before the present trial and convicted of manslaughter, and that about twelve years before the present trial he had been tried in a federal court on a charge of peonage. Appellant objected to the introduction of this testimony and requested the court to instruct the jury not to consider it for any purpose, the objection being that the transactions

were too remote, and therefore, afforded no proper method for impeaching him. We deem it appropriate to quote from Shipp v. State, 104 Texas Crim. Rep. 185. In discussing the question as to when testimony of the character now under consideration becomes too remote to warrant it being received in evidence, Presiding Judge Morrow used language as follows:

"At what period of time testimony of a prosecution for an act of the accused which is discrediting to his veracity becomes too remote to warrant its receipt in evidence seems to the writer one that cannot be arbitrarily determined by the courts. Entering into the relevancy of such testimony there would seem to be many circumstances. For example, the period of the life of the accused at which the discrediting act took place and his subsequent conduct are elements that must be taken into account. Supposing the accused to be a youth, indiscretion amounting to a criminal offense committed by him ten years previous at a time when he was a mere child of tender years would seem, in the absence of supporting testimony showing prosecutions indicating continued evil disposition, to be too remote. Supposing the accused to be of middle age or more and the discrediting fact to have taken place ten years or more antecedent to the time the proof of it was offered in evidence, his freedom from accusations of crime during the intervening space of time would seem of weight upon the relevancy of the proof. In the due administration of justice, the idea of reform—the fact that an individual once bad may have amended his ways—is not to be ignored by the courts. One may have been bad and become good or may have borne an excellent character and a good reputation at no distant time and had become profligate and criminal in his tendencies. This court has oftentimes been called upon to consider, and has considered, the admissibility of testimony to the effect that the accused had been charged with an offense at some time previous to that for which he was on trial, but it has never, so far as the writer is aware, undertaken to fix arbitrarily and absolutely a space of time which would characterize such testimony as too remote. In the opinion of the writer, the nature of things precludes such a declaration. The receipt of such testimony should primarily be determined by the trial judge after an investigation in the absence of the jury to learn whether, under the ascertainable facts, the act is too remote. The exercise of such discretion is subject to review and, in case of abuse, to be revised."

See also Oates v. State, 149 S. W. 1194; Stratton v. State, 8 S. W. (2d) 171.

Having concluded that the fact that appellant was under indictment for bribery was not properly receivable in evidence, we are of the opinion that the principle announced in Oates v. State, supra, and Stratton v. State, supra, has no application here. It appears that after an offense alleged to have been committed more than twelve years before the present trial, appellant had been charged with no act incompatible with an upright life. Applying the test announced in Shipp v. State, supra, we are of the opinion that appellant's objection was well taken.

For the errors discussed, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.