MILTON LOTT v. THE STATE.

No. 15928. Delivered May 10, 1933.
Reported in 60 S. W. (2d) 223.

The opinion states the case.

*Theodore Andress,* of El Paso, for appellant.

*Roy Jackson,* District Attorney, of El Paso, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

HAWKINS, JUDGE.—Conviction is for murder, punishment having been assessed at death.

Deceased was Clarence Erwin, a white man of mature years. Appellant was a young negro man, 24 years of age. Erwin was a dairy route man and on the morning of the homicide, August 23, 1931, was accompanied on his route by his nephew, Rogan Reagan, who was a boy sixteen years old. The two of them stopped about four-thirty a. m. on the corner of Piedras and Silver streets in the city of El Paso to rest. They were out of the milk wagon and sitting on the curb. A car driven by appellant, who was accompanied by Robert Hill, another young negro man, stopped near deceased and Reagan. It seems undisputed that the white men and negroes had no previous acquain-

tance. Appellant and Hill, with three companions, had been having a "party" during which time four bottles of beer had been consumed by the five of them. They all testified that none of them became intoxicated or in any way under the influence of the beer. The "party" broke up about two o'clock. Appellant volunteered to take the others home in the car he was using. He was taking Hill home. Hill was in the back seat of the car, and after giving appellant directions about the streets Hill fell asleep. Appellant became confused as to his location and aroused Hill with an inquiry regarding it; Hill himself seemed not to know just where they were, and suggested that they inquire of the men at the milk wagon. Appellant stopped the car and Hill said, "Say, boy, where are we at?" Deceased appeared to somewhat resent being, as he thought, addressed by the negroes as "boy." Reagan testified that the tone of the inquiry was offensive; that deceased went to the car and passed some words with the negroes, then went to the milk wagon, got a milk bottle and started back towards the car, holding the bottle down by his side; that when he got within about eight feet of the car appellant said to deceased, "You think you are so G— d— smart," and fired one shot at deceased. Appellant's and Hill's version of the matter differ only slightly from that of Reagan. Both appellant and Hill testified that deceased resented being called "boy"; that both of them explained to him that such remark was directed to the boy (Reagan); that after coming to the car and talking to them he returned to the milk wagon mumbling something which Hill did not understand. but which appellant said was about "niggers thinking they are so damn smart nowadays"; that he (deceased) got a milk bottle and advanced towards the car with it in a striking position, saying, "I'll show you how to be so damn smart," to which appellant replied, "I'll show you how to be so damn smart, too," and shot deceased. Both appellant and Hill said they intended no disrespect to deceased, and made the inquiry of the boy in good faith, trying to locate themselves; that they were frightened because of deceased's manner.

Appellant complains of the refusal of a special charge which grouped many facts and presented in detail his claim of self-defense. The court had instructed on that issue in his main charge. No objection was directed to the charge as given apprising the court of appellant's view that it was not sufficiently comprehensive. We are of opinion the charge given amply protected appellant and properly submitted his issue of self-defense, and was more favorable than the refused instruction. The requested charge grouped the facts and required a finding

in appellant's favor on all of them, whereas his right of self-defense would have been complete if some of the facts existed and others did not. In Texas Jurisprudence, vol. 22, p. 1019, is found the following text: "It is clearly improper for the court to group a number of facts and require the jury to believe all of them before they may acquit the defendant unless the existence of all of them is requisite for an acquittal."

McMillan v. State, 73 Texas Crim. Rep., 343, 165 S. W., 576. See, also, Harrelson v. State, 60 Texas Crim. Rep., 534, 132 S. W., 783.

Bill of exception number two complains that the court, over objection, allowed two officers of the corporation which employed deceased to sit with the district attorney during the examination of prospective jurors and advise regarding their selection on the jury, it being appellant's contention that such action influenced the jurors to appellant's prejudice.

Bill of exception number three complains because the widow. of deceased, who had been placed under the rule as a witness after having given her testimony, came into the courtroom and remained during the further hearing of the evidence. It is not claimed that she was again called to the witness stand, the complaint being that in the presence of the jury she exhibited evidence of grief which was detrimental to appellant. The bill shows that neither the court nor counsel for appellant knew that Mrs. Erwin had come back into the courtroom. The evidence heard on the motion for new trial regarding her exhibition of grief is in conflict.

We are of opinion neither of the occurrences complained of in bills two and three were such as to demand a reversal of the judgment. As neither will likely occur on another trial we do not discuss them further.

The serious question found in the record is presented by bill of exception number four. It reflects the following occurrence. Upon cross-examination of appellant the district attorney asked if he had not been convicted of a felony at Beeville and given a five-year suspended sentence. The question fixed no date of such conviction. Counsel for appellant objected to the question and requested the court to have the jury removed that proper objection, exception, and argument might be made. The trial court stated in the presence of the jury that he saw no necessity for that, and in their presence he asked the district attorney if the conviction to which he referred was within 10 years. This question was not answered by the district attorney. Finally, upon insistence of appellant's counsel, the jury was retired. During their absence appellant's counsel stated

to the court that the only time appellant had ever been convicted for anything was in May, 1923, at which time appellant was only 15 years of age, and that the conviction was for theft. Counsel asked permission to prove by appellant in the absence of the jury that the statement was correct. The court declined to hear such proof in the jury's absence, to which appellant excepted. He also objected to any further questions or reference to such conviction on the ground—among others—that it was too remote in point of time. When the jury was returned, the question was repeated by the district attorney and appellant again objected on the ground—among others—that the conviction was too remote in point of time to be admissible for the purpose of impeachment, and that to require appellant to answer the question would be highly prejudicial. The court again overruled the objection and appellant answered the question in the affirmative. It was then elicited from appellant by his own counsel that the conviction in Beeville occurred in May, 1923, at which time appellant was only 15 years old. After developing this fact, appellant's counsel requested the court to instruct the jury to disregard the evidence about the former conviction, and not to consider it for any purpose, or as in any manner affecting the credibility of appellant as a witness. This the court declined to do, to which appellant reserved proper exception. It is apparent that in every way possible counsel sought to inform the court in the absence of the jury that the prior conviction occurred at a time thought to be too remote, and being unsuccessful in this effort, immediately upon the disclosure in the jury's presence of the date of the conviction, sought to have the evidence thereof withdrawn.

The conviction used to impeach appellant as a witness occurred nine and a half years before the trial in the present case, and when appellant was a boy only fifteen years old. The record is bare of any suggestion that since the conviction of theft in 1923 appellant had been charged or convicted of any other offense which would affect his credibility as a witness. Having been given a suspended sentence upon the theft conviction presumptively his conduct up to that time had not been seriously bad. He was not incarcerated in the penitentiary as a result of the former conviction where his conduct was under supervision, but at all times had been so situated that his evil tendencies, if any, might have been fully exercised.

No absolutely iron-bound rule has been laid down to determine the lapse of time that renders a conviction too remote to be shown in evidence as affecting the credibility of a witness. The lapse of time must be considered in connection with

the peculiar facts and circumstances of each individual case. The age of the witness at the time the claimed discrediting conviction took place, and his subsequent conduct are elements that must be taken into account. This is evident from the opinions in Oates v. State, 67 Texas Crim. Rep., 488, 149 S. W., 1194; Bullington v. State, 78 Texas Crim. Rep., 187, 180 S. W., 679; Leach v. State, 78 Texas Crim. Rep., 55, 180 S. W., 122; Shipp v. State, 104 Texas Crim. Rep., 185, 283 S. W., 520; Anderson v. State, 113 Texas Crim. Rep., 450, 21 S. W. (2d) 499; Fritts v. State, 42 S. W. (2d) 609. While such matters must be considered in all cases where a witness is sought to be impeached by showing former conviction or charges of discrediting offenses, it is of paramount importance where the witness thus sought to be impeached is the accused on trial. While this fact does not affect the question of the admissibility of the evidence, yet error in admitting it is in the very nature of things much more serious when it relates to accused than if it affected one who was a mere witness in the case. Although, as here, the jury may be properly instructed that the evidence may be considered by them only on the issue of the credibility of accused as a witness, the frailties of human nature are such that it is expecting much of a jury if they can disabuse their mind of the fact that they are again trying one who has theretofore been convicted or charged with crime.

In Vick v. State, 71 Texas Crim. Rep., 50, 159 S. W., 50, accused testified, and as affecting his credibility, evidence was admitted showing that 13 years before when a boy he had been convicted of a felony. Such evidence, however, was withdrawn from the jury. The judgment of affirmance was written by Judge Prendergast. On account of some expressions in such opinion Judge Harper, in a concurring opinion, said: "I am of opinion that, unless there is other evidence showing a continuity of criminal acts, a conviction had more than seven years prior to the commission of the offense for which he is then on trial would be too remote and should not be admitted."

Judge Davidson wrote in the same case: "The use of prior conviction is for impeachment, and should be and is based upon the idea that the convicted party is or may be corrupt. This must depend upon, to some extent, the subsequent conduct and life of the party. Nothing shown to the contrary the witness would be presumed credible. Unless something shows to the contrary this presumption should not be overturned by a previous conviction of any remote date. This remoteness would depend somewhat upon subsequent conduct. Usually I would be disposed to agree with Judge Harper as to number of years,

but I am not prepared to lay down an iron-bound rule as to date."

Later, in Bullington v. State, 78 Texas Crim. Rep., 187, 180 S. W., 679, Judge Harper reaffirmed the views expressed by him in Vick's case. The subject was again considered at some length in Shipp v. State, 104 Texas Crim. Rep., 185, 283 S. W., 520, and Judge Morrow, expressing the views of this court as now constituted, said: "* * * At what period of time testimony of a prosecution for an act of the accused which is discrediting to his veracity becomes too remote to warrant its receipt in evidence seems to the writer one that cannot be arbitrarily determined by the courts. Entering into the relevancy of such testimony, there would seem to be many circumstances. For example, the period of the life of the accused at which the discrediting act took place and his subsequent conduct are elements that must be taken into account. Supposing the accused to be a youth, indiscretion amounting to a criminal offense committed by him ten years previous at a time when he was a mere child of tender years would seem, in the absence of supporting testimony showing prosecutions indicating continued evil disposition, to be too remote. * * * This court has oftentimes been called upon to consider, and has considered, the admissibility of testimony to the effect that the accused had been charged with an offense at some time previous to that for which he was on trial, but it has never, so far as the writer is aware, undertaken to fix arbitrarily and absolutely a space of time which would characterize such testimony as too remote. In the opinion of the writer, the nature of things precludes such a declaration. The receipt of such testimony should primarily be determined by the trial judge after an investigation, in the absence of the jury, to learn whether, under the ascertainable facts, the act is too remote."

See, also, Anderson v. State, 113 Texas Crim. Rep., 450, 21 S. W. (2d) 499; Fritts v. State, 42 S. W. (2d) 609. It may be that the illustration used in the opinion just quoted in which is found reference to a crime committed *"ten* years previous" by one who is youthful and indiscreet may have misled the learned trial judge in the present case into the belief that if the conviction sought to be shown was not more than *ten* years prior to the commission of the present offense proof of such former conviction would be admissible. The reference to *ten* years prior criminal offenses was intended and used as an illustration only. The court was undertaking to make clear its view that no particular time could be laid down arbitrarily as remote or otherwise. This court realizes that a difficult burden is

placed on the trial judge to determine in each case under all the ascertainable facts the question of remoteness in the absence of an absolute time limit, and yet fails to see how such limit can be fixed without resulting in some instances in injustice either to the state or accused. Where either the state or defendant seeks to impeach a witness by proof of former convictions, or legal charges against him of crimes, and the question of probable remoteness arises, and the party so seeking to impeach is not able to show intervening discrediting convictions or charges, the court should carefully ascertain and consider all available facts and circumstances, and if, after having done so, there should be left any doubt of the propriety of admitting the evidence, it should be excluded.

We are of opinion that under the circumstances exhibited in the present record evidence of the former conviction of accused should have been excluded. That proof of it was hurtful to him is not debatable.

The proposition is advanced that because the former conviction of accused occurred when he was only 15 years old, that such conviction should be regarded as a conviction for delinquency under the law relating to "juveniles," and that article 1092, C. C. P. (1925) should be given effect. The article reads: "A disposition of any delinquent child under this law or any evidence given in such case, shall not, in any civil, criminal, or other cause or proceeding whatever, in any court, be lawful or proper evidence against any child for any purpose whatever, except in subsequent cases against the same child under this law. Neither the conviction of the accused as a delinquent child nor the service of sentence thereunder shall deprive him or her of any rights of citizenship when such child shall become of full age."

The article has been given effect in Robinson v. State, 110 Texas Crim. Rep., 345, 7 S. W. (2d) 571; Smith v. State, 113 Texas Crim. Rep., 124, 18 S. W. (2d) 1070, and other cases holding inadmissible for impeachment purposes proof of conviction under the juvenile or child delinquency statute. While accused, at the time of the former conviction, might have been proceeded against as a delinquent child, there is nothing in the present record indicating that the conviction referred to was for delinquency, therefore, we can make no application of article 1092, C. C. P. If considered at all, it is only as it throws light generally on the attitude of the law-making body towards youthful offenders.

For the error pointed out the judgment is reversed and the cause remanded.                    *Reversed and remanded.*