DOCK MARTIN v. THE STATE.

No. 2105.  Decided November 22, 1899.

**1. Continuance—Diligence.**

An application for continuance is insufficient as to diligence which shows that defendant caused process to issue for the witness only two days before the trial, which was six months after the finding of the indictment.

**2. Same—Evidence to Impeach—Preaicate.**

An application for continuance will not be granted for testimony to impeach another witness; and furthermore, will be held properly overruled where it does not appear that a sufficient predicate was laid for the impeachment of such other witness when he was testifying upon the stand.

**3. Same.**

An application for a continuance to obtain the testimony of a medical expert will be held to have been properly overruled where, in the light of the other evidence adduced at the trial, such testimony would not be material nor probably true.

**4. Assault to Murder—Evidence—Antecedent Quarrels.**

On a trial for. assault to murder, it is competent and admissible, upon the question of motive and intent, to prove that the parties involved in the assault had a previous trouble and quarrel.

**5. Argument of Counsel.**

A defendant can. not be heard to complain of the argument of the prosecuting counsel which is provoked by and is a legitimate reply to the argument made by his own counsel.

**6. Evidence of Previous Quarrels—Charge of the Court as to.**

On a trial for assault to murder, where evidence had been admitted as to a previous quarrel between the parties, and the court in its charge had properly limited such evidence to the sole purpose of showing the state of feeling between the parties, this was both proper and sufficient as to the matter, and it was not error to refuse a special instruction that the same should not be considered for any purpose.

APPEAL from the District Court of Gonzales.  Tried below before Hon. M. KENNON.

Appeal from a conviction for assault with intent to murder; penalty, two years and six months imprisonment in the penitentiary.

The indictment charged appellant with an assault with intent to murder Walter Woods, on the 23d of December, 1898.

The testimony of the prosecuting witness shows all the material facts, and it is as follows, viz.:

Walter Woods, sworn for the State, says: "I live in Gonzales County; my name is Walter Woods, and I am the party alleged to have been assaulted by the defendant. I know the defendant, Dock Martin (here recognizes him in court). He is my brother-in-law. Some time in the latter part of last fall, and a short time before the defendant assaulted me, I was on my way home from the town of Gonzales. I overtook the defendant, who lived near me, and who was on his way home. Defendant stopped me and said he understood that I had accused him of stealing cotton. I told him no, I had only said I missed cotton from my pile in the field, and the tracks led from mine to your pile of cotton. I told him I did not say he stole the cotton, but stated about the tracks, and on account of my sister, I told him I would drop the matter and rode off and left defendant. On the night of the 23d day of December, 1898, I went to a dance at Mr. W. T. Deaton's, who lived in our neighborhood. Had not been there long before I saw Mr. Tomlinson, the constable, going from the house towards a fire outside of the yard with Bud Christian, who seemed to be somewhat intoxicated. There were several parties with them. I was in the crowd, and as we all were going along towards the fire, Lamon Harris spoke up and said, 'Boys, let us have a fight between Walter Woods (meaning me) and Bud Christian.' I replied, saying: 'I would not fight a drunk man, but I would fight a sober man.' I then went to the house, and was standing on the gallery, and had been there only a short time when Lemon Harris came up and called me out and said he wanted to see me, and we walked off a few feet from the gallery; and the defendant, Dock Martin, went with us. Lemon Harris asked me what I meant by saying I would fight a sober man. I told him nothing, and I asked him what he meant by saying let us have a fight between me and Bud Christian. He said, 'Nothing, but, by God, we are fixed for you,' and partly drew his pistol. At the same time the defendant, Martin, stepped back, drew his pistol and said, 'You God-damned white-eyed son of a bitch, I will kill you,' and commenced shooting at me, and fired two shots at me before I got out my knife. I was trying to dodge the bullets. He fired four shots at me and some parties ran up and caught him, and Mr. Tomlinson caught me. The defendant got loose from the parties, or they turned him loose, and he started to his wagon, which was in the lot, saying, 'By God, I have got something out here which I will fix him with.' The wagon was only a few steps off. I followed close to him, and as he reached in the wagon and got his gun, and was in the act of turning around, I cut him twice with a dirk knife in the left shoulder and back, and then ran, and as I was running away he shot me with a shotgun in the right shoulder, which was the cause of me

losing my right arm. When I started to the dance, I had a half pint of blackberry brandy, and had taken two drinks. I had a dirk knife and carried it with me. I did not have any trouble that night with Bud Christian. I did not, on that day, say to Sam Cobb that I was going to a dance that night and expected trouble, and wanted to trade him a dirk for a pistol. I did, some time before that, while in Sam Cobb's store, have a conversation with him about a pistol; he wanted to sell me one, and I wanted to trade a dirk for it. I have never made a threat against the defendant. I know he was mad at me, but thought we would have no trouble. All this occurred in Gonzales County, on the 23d day of December, 1898. I am positive I did not cut defendant in the yard while he was shooting at me with a pistol, but I cut him after he had gone to the wagon and got his shotgun."

No further statement necessary.

*George Burgess,* for appellant.—(No brief for appellant found in the record.)

*Rob't A. John,* Assistant Attorney-General, for the State.

BROOKS, Judge.—Appellant was convicted of assault with intent to murder, and his punishment assessed at two years and six months confinement in the penitentiary.

Appellant's first bill of exceptions complains of the court overruling his motion for continuance. The contention was made on account of the absence of Dr. W. J. Hildebrand, Leslie Willard, and Mat Good. It appears from the judge's qualification to the bill that Leslie Willard was present and testified on the trial in behalf of appellant. The diligence as to the witness Good is to the effect that appellant, some six months after indictment, upon information received two days before the trial, caused process to issue for the witness Good, who was absent from home, in Caldwell County. It occurs to us that by the use of diligence he could have learned of the witness' testimony sooner. By said witness appellant says "he could have shown that the said Woods told him he would not have quit cutting defendant, but he thought he had cut him a plenty; that he had him dead." (Woods is the assaulted party.) This testimony would have served only to impeach said Woods, and it does not appear that appellant laid any predicate, by asking the witness Woods as to whether or not he made this statement. In any event, it would not have been admissible until the proper predicate had been laid, and this was not done. James v. State, 32 Texas Crim. Rep., 508; Rogers v. State, 40 Texas Crim. Rep., 355. As to the witness Dr. Hildebrand, appellant says "he expected to show that the witness is a physician and surgeon, and dressed the wounds of appellant upon the night of the difficulty, and is an expert as to the wounds, and character of the wounds, upon him; that said wounds were serious, and made with a sharp instrument, one wound

being in the back, and the other in the back of the left arm, and both show, by the range and character, that cutting was done from the left side and · in front of defendant, which testimony becomes most material, since defendant is informed and believes that the alleged assaulted party will claim that both these cuts, and all cuts, were made by him from behind, and after defendant had shot at him with a pistol." We do not think that said testimony is material or probably true, in the light of the record before us.

Appellant's second bill of exceptions is with reference to the admission of a previous quarrel had with the injured party. The bill presenting this question is in substance as follows, to wit: "Some month or so before this shooting now on trial, as I was coming home from the town of Gonzales, the defendant overtook me and stopped me in the road, and said, 'I understand that you accuse me of stealing your cotton, and that must be settled.' I told him that I had said that my cotton was stolen, and that there were tracks leading from my pile of cotton in' my field, but that, on my sister's account, I would drop the matter.'" The judge approved this bill, with this qualification "that the witness Woods, in the conversation alluded to, stated to defendant that he had not said that he had stolen his cotton; that he (witness) had only said that some one had stolen his cotton, and that tracks led from witness' pile of cotton to defendant's pile of cotton." This was objected to by appellant upon the ground that no difficulty could be described to the jury by this or any other witness, save the one on trial, and that the details of any trouble prior to the one on trial between .the witness and defendant could not be gone into by the State, which objections were overruled. We think this evidence was clearly admissible on the question of motive and intent on the part of appellant at the time of the assault made upon the witness Woods. Where it becomes necessary to prove motive, intent, or knowledge on the part of the defendant, it is admissible to prove other and distinct crimes, in order to show said intent, motive, and knowledge. In Martin v. State, 28 Texas Crim. App., 365, Judge Wilson, delivering the opinion of the court, said: "In addition to the property named in the indictment, the same mortgage included a yoke of oxen, but the defendant is not charged in said indictment with the fraudulent disposition of said oxen. On the trial, however, the State, over the objections of the defendant, was permitted to prove by one Stevens that, ·about one month prior to the time that defendant sold the corn and wagon, he (witness) purchased from defendant the oxen mentioned in the mortgage. Defendant objected to the testimony on the ground that it was irrelevant. It was admitted as relevant upon the issue of the intent of the defendant in selling the corn and wagon, and the jury specially instructed that it was admitted for that purpose only, and could not be considered for any other. We are of opinion that the court did not err in this ruling." Applying the principle in the foregoing excerpt, we conclude that the

evidence of the previous quarrel or colloquy between the prosecutor, Woods, and appellant was germane to and connected with this case, in this: that the accusation of the prosecuting witness against appellant is admissible to show that appellant was angry with the witness, and thereby proves motive and intent on his part in making the assault. Hall v. State, 31 Texas Crim. Rep., 565; Hamblin v. State, ante, p. 135; Hudson v. State, 28 Texas Crim. App., 323; Martin v. State, 28 Texas Crim. App., 365; Leeper v. State, 29 Texas Crim. App., 65; Barkman v. State, ante, p. 105.

Appellant's third bill of exceptions complains of the action of the court in permitting the prosecuting attorney, in his closing speech, to say: "Of course, the defendant stole the cotton from Walter Woods. Why, he told you that cotton was gone from his pile of cotton in his field, and that tracks led from his pile to the defendant's pile of cotton in the defendant's field. Of course, he stole the cotton. Everybody must think that. What would you think from such facts? That's the character of man he is,—to steal his brother-in-law's cotton, and then to lay for him at a dance, and try to kill him, because he had said that he had seen the tracks and missed his cotton." The court qualifies this bill as follows: "The defendant's counsel said in his argument to the jury that the witness Woods had accused his brother-in-law (defendant) of stealing his cotton simply because he found tracks leading from his (witness') pile of cotton to defendant's, and that this unfounded accusation showed that the witness had malice against defendant, and showed that he was likely to raise a difficulty with defendant. Under these circumstances, the court refused to stop the argument of the district attorney, because it is considered a legitimate reply to the argument of counsel for defendant." The court's explanation disposes of appellant's objection. It appears that the remarks of the prosecuting attorney were in answer to an argument made by appellant. We do not think there was any error in said ruling. Smith v. State, 21 Texas Crim. App., 276; Pierson v. State, 21 Texas Crim. App., 14; Parker v. State, 39 Texas Crim. Rep., 262.

Appellant's fourth bill complains of the failure of the court to give appellant's special charge wherein he requested the court to instruct the jury not to consider the cotton-track conversation for any purpose. As indicated above, we do not think there was any error in this. But in this connection the court gave this charge: "Evidence as to the alleged conversation between defendant and Walter Woods relative to cotton being stolen is admitted as a part of the alleged conversation, for the sole purpose of showing the state of feeling between the parties, if it does so, and is to be considered by you for that purpose alone, for what you may think it worth, if anything." We think this was proper and sufficient, under the circumstances. We have carefully reviewed the record before us, and, finding no error therein, the judgment is in all things affirmed.

*Affirmed.*