BART CARNES v. THE STATE.

No. 3385.   Decided May 8, 1907.

**1.—Local Option—Evidence—Manner of Conducting Business.**

Upon a trial for a violation of the local option law, where the evidence of the sale of whisky was not direct or positive, there was no error in showing how the defendant and his partner took whisky from the express office at different times before and after the date of the offense alleged in the information, and peddled it out to purchasers out of their buggy, which sales were similar in manner to the one for which defendant was being tried.

**2.—Same—Date of Offense—Contemporaneous Transaction.**

Upon trial for a violation of the local option law, there was no error in ad-

mitting in evidence the testimony of the express agent that defendant received a consignment of whisky some eight or ten days after the date alleged in the indictment, where the transactions were connected and near together in point of time, and it was not definitely shown that the sale alleged in the indictment occurred on a certain day.

Appeal from the County Court of Comanche. Tried below before the Hon. J. H. McMillan.

Appeal from a conviction for a violation of the local option law; penalty, a fine of $50 and fifty days confinement in the county jail.

The opinion states the case.

*Helton & Jackson,* for appellant.—Parker v. State, 8 Texas Ct. Rep., 112.

*F. J. McCord,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of violating the local option law; and prosecutes this appeal.

Prosecuting witness, John King, testified substantially that sometime in the fall of 1905, in the town of Comanche, he asked defendant for a quart of whisky; defendant told him he did not have any, but thought he knew where he could get some. This occurred on the southeast corner of the square in the town of Comanche. The witness and defendant walked up the street to Will Martin's buggy; defendant went in the store where Martin was, had a conversation with him, and then they came out, and witness, defendant and Martin got into Martin's buggy and they went to the wagon yard; witness got out of the buggy, went behind it and got a quart of whisky from the buggy, and left $1.05 in the back end of the buggy. The witness stated he knew the price of the whisky because he had taken whisky out of the express office; there was nothing said about the price of the whisky. After witness got the whisky out of the buggy the defendant and Will Martin went off together in the buggy and witness walked back up in town.

Will Martin, an accomplice, also testified for the State as did the witness King; he further testified that he got the $1.05 that prosecutor left in the buggy; that he and appellant did business together in the sale of whisky; sometimes whisky was shipped by express in his name and sometimes in appellant's name; he testified that he did not know whether the whisky that was sold to John King was partnership whisky belonging to him or to defendant; that sometimes one would send for whisky, and sometimes the other, and when they would get a shipment, he had a buggy, and they usually took the whisky and put it in the buggy, and when they found a buyer, would drive off to some wagon yard, or behind some house and deliver the whisky from the buggy; that they divided the proceeds of the whisky every night, and that they divided the proceeds of the whisky on the night the whisky was sold to John King.

Appellant's first bill of exceptions questions the action of the court in permitting the State to prove by the witness Martin that he and defendant took whisky from the express office in the town of Comanche about the 15th day of November, 1905, prior to and after that date, and that he and defendant were peddling whisky in and about the town of Comanche about said dates; that he and defendant had a great deal of whisky shipped to them about the 15th day of November, 1905, prior to and after that date, and that defendant took from the express office at one time a package of whisky for which defendant paid $35 or $40, and that he (Martin) furnished defendant a part of the money to take it out, and got a part of the whisky, and he and defendant sold it that day and night. To all of this testimony defendant objected on the ground that he was charged with selling intoxicating liquor on the 15th day of November, 1905, to one John King in violation of the local option law; that this testimony had no connection with the sale charged, and did not show system of sale, and did not develop the res gestæ of the alleged sale to John King, and did not tend to identify the transaction for which defendant was then being tried, and tended to prove other violations of the law than the one for which defendant was on trial. The court in explaining this bill says: "Before the witness Martin was put on the stand the witness John King had testified that he met defendant on the public square in Comanche, and asked defendant for some whisky; defendant said he did not have any whisky but that he thought he knew where they might get some whisky; that witness and defendant walked up the street together to where Will Martin's buggy was standing; that defendant went into a store where Will Martin was and spoke to him, and they came out. Witness, Will Martin and defendant all got in the buggy and drove around into a wagon yard; witness got out and went around to the back of the buggy, and got a quart of whisky out of it and put down a dollar and five cents. The witness Martin testified to peddling whisky, as stated in the above bill, and also testified that the way they usually peddled the whisky, he would take the whisky in his buggy, and he and defendant would both look out for buyers; that when they found a buyer they would drive the buggy to some wagon yard or secluded place and deliver whisky from the buggy." The court further says he instructed the jury in effect, "that testimony was introduced concerning transactions in regard to intoxicating liquors between defendant and witness Will Martin; that this testimony was introduced and admitted for the purpose of showing system; that the jury were instructed to consider it for no other purpose." There was no direct and positive sale testified to on the part of the State's witness King; he testified to circumstances that suggested a sale in which appellant might be a participant, or might not be; that is, according to King's testimony appellant said he thought he knew where they could get some whisky, and called on Martin, and they got in the buggy, and it appears that the delivery was made from the buggy by Martin, and the money was left by King in the buggy,

and Martin says he got it. Unless there was some proof connecting appellant further with this transaction as a sale he could still insist that what he did was in the interest of the purchaser and not the seller. However, the State introduced Martin, and he testified to facts showing that he was a partner with appellant, and that they conducted their sales after that manner. A conviction could not be had on the testimony of the accomplice alone, but the testimony of the prosecutor tended to connect appellant with the sale. We believe that the testimony was admissible.

Appellant's next bill reserved an exception to the action of the court in admitting the testimony of H. W. Hart, a witness for the State. He testified that he was express agent in the town of Comanche, and that he remembered that defendant took out of the express office in the town of Comanche a package of whisky for which he paid $35; that his express book showed that it was on the 25th of November, 1905. This was objected to on the ground that it was subsequent to the transaction of sale alleged against appellant in this case, which was on the 15th of November, 1905, and was not connected with the transaction charged against appellant. The court approved this bill with the following explanation: "Prior to the time the witness Hart was placed on the stand, Will Martin, a witness for the State, had testified that he and defendant peddled whisky together during the fall of 1905; that witness did not remember the date of the sale to John King, and did not remember the date they received the $35 shipment of whisky to defendant, but that the sale to John King was made about the time defendant received a half barrel of whisky for which they paid $35 or $40. The indictment was filed on April 27th, 1906, and alleged the offense to have occurred on or about November 15, 1905." The explanation here would indicate that in the opinion of the court the transactions, if not exactly contemporaneous, were near together in point of time. We take it that shortly before the date of the alleged sale to prosecutor by appellant it could be shown that appellant had received, or he and his partner Martin had received a consignment of whisky. See McKinley v. State, 82 S. W. Rep., 1042. The explanation of the court, while it does not show that the transactions were contemporaneous, it shows that the whisky was received about the time of the alleged sale. The date in the indictment or information as to the sale would cut no particular figure, unless it was definitely shown that said sale occurred on the 15th. Under the explanation of the court we believe the testimony was admissible.

There being no errors in the record, the judgment is affirmed.

*Affirmed.*