### WILL FRITTS v. THE STATE.

No. 14328. Delivered June 3, 1931.
Rehearing Denied October 28, 1931.

See, also, 114 Texas Crim. Rep., 542, 26 S. W. (2d) 643.

The opinion states the case.

*Murchison, Davis & Murchison,* of Haskell, for appellant.

*Will W. Hair,* of Abilene, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is murder; the punishment, death.

The conviction is for the murder of D. Hamilton.

At the April term, 1928, of the district court of Haskell county appellant was indicted for selling intoxicating liquor to Earl Hamilton, the 17 year old son of deceased, D. Hamilton. The indictment was returned May 14, 1928. Earl Hamilton, son of deceased, was a witness before the grand jury in connection with said case. The case was set for trial October 22, 1928, and upon being called on the date last mentioned was postponed until the following Monday. Earl Hamilton was present in court on October 22nd when the case was first called for trial. Appellant was there and saw him, and knew he was a witness against him. A few days before the case was to be called the second time appellant went to the home of deceased at night. Deceased and his son had been working in the field all day and had gone to bed early. Appellant drove up to deceased's gate and called to Earl Hamilton. Deceased got up and went into the hall, and appellant came up on the porch. Appellant asked

deceased if his name was Hamilton. Deceased replied in the affirmative. Appellant then asked deceased to call his son Earl. Deceased asked appellant: "What do you want to talk to him about?" Appelalnt said: "I want to talk to him about some things." On being called by his father, Earl Hamilton came out on the porch. All three of the parties seated themselves on the edge of the porch, and they began talking. The wife of deceased testified that Earl Hamilton said to appellant: "I told them I got it from you." She testified further that appellant said something in an angry tone of voice and that her husband (deceased) told appellant he did not want any of his foolishness. Immediately after this last remark was made the witness heard a shot and went into the hall. Her husband fell to the floor near the front door, mortally wounded. The witness said she saw appellant shoot Earl Hamilton in the back while he (Earl Hamilton) was running around the corner of the porch. Earl Hamilton died instantly. We quote the testimony, in part, of the daughter of deceased:

"Earl went out to the porch and I heard him speak to Fritts, he said, 'Hello Will', and he said 'Hello, Earl'. And I heard papa tell him he could talk to him right here. I couldn't understand all they said. I heard Earl say, 'I told them I got it from you', and when he did Fritts yelled out something, and papa told him he didn't want to hear any of his foolishness, and when he did that I heard a gun fire, two shots fired in succession and a pause, and another one, and I could hear mama scream. I got out of bed as quick as I could and went to the dining room door. I could see papa on the porch just outside the hall door; I don't think he was dead at that time, but he was groaning."

A witness for the state testified that some time before the homicide he had heard appellant say to one Lockaby: "I feel d-n sorry for you or for any man who ever testifies in court that he bought whisky from me." Appellant denied that he made this statement and testified that he had no ill-will toward deceased or Earl Hamilton. He said he went to see Earl Hamilton about his testimony in the case that was pending against him, with no intention of harming him. According to his version, after he had talked to deceased and Earl Hamilton a short time, deceased said to him (appellant): "I will get my gun and kill you." He testified that he was afraid deceased was going to carry the threat into execution, as he (deceased) approached the front door where he (appellant) had seen deceased place something as he came out on the porch. As to the shooting of Earl Hamilton, appellant declared that he did not know why he shot him, but he explained that he was frightened.

It appears from the state's testimony that deceased's back would have been to appellant as he approached the front door of his house. The wound inflicted on deceased by appellant entered the left breast. Deceased's shirt was powder burned. Earl Hamilton was shot in the back.

Bills of exception 1 to 3, inclusive, relate to the same question. The state introduced in evidence, over appellant's objection, an indictment charging appellant with the sale of intoxicating liquor to Earl Hamilton, son of deceased. This indictment had been returned after Earl Hamilton had testified before the grand jury. He had told appellant that he had so testified before the grand jury. Appellant knew that Earl Hamilton was a witness for the state touching the matter of the alleged sale of liquor. Deceased had advised appellant shortly before appellant shot him that his son, Earl Hamilton, would tell the truth when called to testify against appellant. It was the state's theory, given support in the evidence, that appellant killed Earl Hamilton because his testimony had resulted in the indictment, and that he killed deceased because deceased had declared, in effect, that he wanted to see that his son testified to the truh when called into court. It is obvious, we think, from the state's standpoint, that the indictment caused appellant to kill both deceased and Earl Hamilton, and was admissible in evidence as tending to prove motive. Testimony is admissible which fairly tends to raise an inference in favor of the existence of a motive on the part of the accused to commit the alleged offense for which he is on trial. Branch's Annotated Texas Penal Code, sec. 1879; Barkman v. State (Texas Crim. App.), 52 S. W., 69; Woodward v. State, 42 Texas Crim. Rep., 188, 58 S. W., 135. The state is warranted in proving the relation of the deceased to a former case if it furnishes a reason for ill-will on the part of accused toward deceased. As stated by Mr. Branch, in his Annotated Penal Code, sec. 1880, "a former indictment against defendant charging him with a separate offense from the one for which he is on trial may be put in evidence to show motive when it tends to support the theory that defendant intended to prevent adverse disclosures by deceased who was a witness against him." Dill v. State, 1 Texas App., 278; Johnson v. State, 29 Texas App., 150, 15 S. W., 647.

Bill of exception No. 4 discloses that appellant was required to testify, over his objection, that the incident was too remote, that he had been indicted by the grand jury of King county, Texas, in September, 1921, for the offense of perjury. The indictment was not connected with the offense for which appellant was on trial. If the impeaching testimony is not too remote, the accused, when testifying, or any other witness, may be impeached by the adverse party by proving by the witness on cross-examination that he had been indicted for a felony. Branch's Annotated Texas Penal Code, sec. 167; Hunter v. State, 59 Texas Crim. Rep., 439, 129 S. W., 125. The opinion is expressed that the objection was properly overruled. It may be added that the evidence shows that appellant did not reform after his indictment in 1921. Numerous indictments charging him with felonies were returned at different times up to and including April, 1928. Hence, if standing alone, the indictment returned in 1921 should be held to be too remote, nevertheless, when considered in

connection with the subsequent indictments, it was proper to require appellant to testify that he had been indicted in 1921. Oates v. State, 67 Texas Crim. Rep., 488, 149 S. W., 1194. Any intention of holding that the indictment standing alone was too remote is disclaimed. We quote the language of Judge Morrow, in Shipp v. State, 104 Texas Crim. Rep., 185, 283 S. W., 520, as follows:

"At what period of time testimony of a prosecution for an act of the accused which is discrediting to his veracity becomes too remote to warrant its receipt in evidence seems to the writer one that cannot be arbitrarily determined by the courts. Entering into the relevancy of such testimony, there would seem to be many circumstances. For example, the period of the life of the accused at which the discrediting act took place and his subsequent conduct are elements that must be taken into account. Supposing the accused to be a youth, indiscretion amounting to a criminal offense committed by him ten years previous at a time when he was a mere child of tender years would seem, in the absence of supporting testimony showing prosecutions indicating continued evil disposition, to be too remote. Supposing the accused to be of middle age or more, and the discrediting fact to have taken place ten years or more antecedent to the time the proof of it was offered in evidence, his freedom from accusations of crime during the intervening space of time would seem of weight upon the relevancy of the proof. In the due administration of justice, the idea of reform—the fact that an individual once bad may have amended his ways—is not to be ignored by the courts. One may have been bad and become good, or may have borne an excellent character and a good reputation at no distant time and had become profligate and criminal in his tendencies. This court has oftentimes been called upon to consider, and has considered, the admissibility of testimony to the effect that the accused had been charged with an offense at some time previous to that for which he was on trial, but it has never, so far as the writer is aware, undertaken to fix arbitrarily and absolutely a space of time which would characterize such testimony as too remote. In the opinion of the writer, the nature of things precludes such a declaration. The receipt of such testimony should primarily be determined by the trial judge after an investigation, in the absence of the jury, to learn whether, under the ascertainable facts, the act is too remote. The exercise of such discrtion is subject to review, and, in case of abuse to be revised."

See Stratton v. State, 110 Texas Crim. Rep., 254,. 8 S. W. (2d) 171; Anderson v. State, 113 Texas Crim. Rep., 450, 21 S. W. (2d) 499.

Bills of exception 6, 7 and 8 deal with the same question and will be discussed together. Appellant testified, on cross-examination, without objection, that he had been indicted for selling intoxicating liquor to O. S. Shamburger. He had not been tried on this indictment. The district attorney asked appellant if it were not a fact that he went to

O. S. Shamburger after he was indicted and told him what he would do if he appeared as a witness against him in the liquor case. Appellant objected to the asking of the question on the ground that it was prejudicial, inflammatory and irrelevant, and asked the court to instruct the jury to disregard it for any purpose. The objection being overruled, appellant answered in the negative. Substantially the same question was asked appellant in connection with an indictment charging him with the sale of intoxicating liquor to Roy Petit. The district attorney also asked appellant if he knew that Petit was in Louisiana when the case was called for trial. Appellant answered both questions in the negative. The matter was pursued no further by the district attorney. If the questions were improper, which is not decided, a reversal would not necessarily follow. In Booth v. State, 90 Texas Crim. Rep., 240, 234 S. W., 888, this court, speaking through Judge Hawkins, said: "It is in exceedingly rare instances where this court would feel called upon to reverse a case solely because counsel may have propounded an improper question." We quote from Ard. v. State, 101 Texas Crim. Rep., 545, 276 S. W., 263, as follows: "The asking of a question whose affirmative answer might be hurtful to the accused would ordinarily present no error when complained of in a bill of exceptions unless the answer is given, and, if given and answered in the negative, as is the case in appellant's bill of exceptions No. 5, no error would be made to appear."

In support of his contention that the mere asking of the questions constituted reversible error, appellant cites Baird v. State, 111 Texas Crim. Rep., 351, 12 S. W. (2d) 1034, and Clark v. State, 115 Texas Crim. Rep., 7, 29 S. W. (2d) 390. In Baird's case the state elicited from the accused that she had been previously indicted. It was then shown by her counsel that the indictment had been dismissed. The state was then permitted to show that at a previous time a still had been found in the house of the accused, and that her brother had been tried and acquitted of a liquor charge growing out of the same transaction. Thus the state introduced affirmative testimony hurtful to the accused. In the case at bar the answer was favorable to appellant, and no affirmative testimony supporting the matter sought to be proved was introduced by the state. In Clark's case the state asked Clark if he had not previously been indicted and the cases dismissed because the witnesses had been run off. Clark answered that he had been previously indicted, but that he did not know whether the indictments had been dismissed because the witnesses had been run off. Clark did not give a negative answer, but answered in a manner that left the matter uncertain. In view of the question and the answer in Clark's case, the imputation was present that Clark had been instrumental in keeping witnesses in separate and distinct cases from appearing against him. Considering the questions in the light of the facts in evidence, we think that, if the questions were improper, the holding

in Ard v. State, supra, should be given application. It may be added that it is not clear that said questions were improper. According to the state's testimony, as hereinbefore related, sometime before the homicide appellant had said to one Lockaby: "I feel d—n sorry for you or for any man who ever testifies in court that he bought whisky from me." Appellant denied that he made thih statement. He denied that he went to the home of deceased for the purpose of killing Earl Hamilton if he would not change his testimony, or leave the country. He interposed a plea of self-defense, and testified to facts tending to show that he was not actuated by malice when he fired the fatal shots. It is the rule that antecedent menaces or former quarrels between the parties may be proved to show the state of mind or malice of the accused at the time of the alleged offense, and to establish a motive for its commission. Branch's Annotated Penal Code, sec. 1881; Martin v. State, 41 Texas Crim. Rep., 242, 53 S. W., 849. However, proof of an extraneous crime or disconnected transaction should not be admitted to show motive unless there is some logical connection between it and the particular act under investigation. Branch's Annotated Penal Code, sec. 1882; Barkman v. State, 52 S. W., 69; Woodward v. State, 42 Texas Crim. Rep., 188, 58 S. W., 135. It is not clear that in the light of the facts and circumstances in evidence in this case that appellant's acts and threats toward those who claimed to have purchased liquor from him, within which class Earl Hamilton was embraced, and also deceased by virtue of his support of Earl Hamilton in testifying truthfully about the matter, were not logically connected with the killing of deceased and properly admissible as tending to show appellant's state of mind and the motive that actuated him in firing the fatal shot. See Russell v. State, 84 Texas Crim. Rep., 245, 209 S. W., 671. However, we do not deem it necessary to decide whether the questions were proper.

Appellant brings forward eleven bills of exception in which he complains of the argument of the district attorney. We have carefully examined each of these bills and are constrained to hold that the remarks of counsel were not unwarranted. For example, the district attorney stated in argument that a grand jury of King county, in indicting appellant for perjury, had believed that he had given false testimony in some other case or proceeding. This indictment was not conencted with the case on trial. We see nothing improper in the argument. Again, the district attorney stated, in substance, in argument, that appellant's customers were possibly so numerous on the occasion of the sale of intoxicating liquor to Earl Hamilton that he could not remember that he had had the transaction with Earl Hamilton. In view of the facts in evidence, this statement seems to be within the bounds of legitimate argument. Again, in argument, the district attorney pictured the sorrow in the home of deceased. Also, he urged that the infliction of death for crime was

proper, and referred to the fact that some of the states which had abolished the death penalty were finding it necessary to bring it back into their procedure. It can serve no useful purpose to set out the remarks embraced in the eleven bills of exception. Suffice it to say that in examining said bills we have had in mind the rule stated by Judge Hawkins in Silver v. State, 110 Texas Crim. Rep., 512, 8 S. W. (2d) 144, which we quote: "Another thing that must be borne in mind is that the facts and surroundings of the particular case should be looked to in determining the effect of an argument complained of. The same language under a certain state of facts might be highly prejudicial, and not so regarded under other circumstances. This is illustrated in Todd v. State, 93 Texas Crim. Rep., 553, 248 S. W., 695; Coates v. State, 98 Texas Crim. Rep., 314, 265 S. W., 891; Vineyard v. State, 96 Texas Crim. Rep., 401, 257 S. W., 548."

If the state's testimony was to be believed by the jury, appellant committed an atrocious crime. If appellant's theory that he killed deceased in self-defense had been believed the jury would have acquitted him. Having accepted the state's version of the transaction, it is not strange that the jury inflicted the extreme penalty. The conclusion is inescapable that the jury responded alone to the facts and circumstances in evidence in assessing the penalty.

All of appellant's contentions have been carefully examined. The opinion is expressed that the record presents no question warranting a reversal.

The judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—Appellant insists in his motion for rehearing that we were wrong in our original opinion in not holding it reversible error for the state's attorney, on the trial of this case, to ask appellant while a witness if he had not gone to one Shamburger, in one instance, and one Petit in another, and told them what he would do to them if they appeared as witnesses against him in certain liquor cases. It is said in each bill of exception presenting this complaint that appellant answered "No". In our original opinion we said, in substance, that the negative answers justified the trial court in concluding that there was no such harm possible from the mere asking of the questions as would have required of the trial court the granting of a new trial, even if the questions themselves were not permissible, a doubt being expressed on this point.

Appellant most earnestly insists that upon the authority of Baird v. State, 111 Texas Crim. Rep., 35, 12 S. W. (2d) 1034, and Clark v. State, 115 Texas Crim. Rep., 71, 29 S. W. (2d) 390, we should have reversed the case for the mere asking of the questions referred to. We have again carefully examined and considered the matter.

It is sound to say that the correctness of any citation of precedents depends upon the analogy in facts and applicable legal principles between the present and any cited case. In the case at bar the theory of the state, having foundation in testimony, was that appellant shot and killed deceased and his son Earl at night at their home to which he had gone armed with a pistol for the purpose of compelling Earl, who was a witness against him in a pending liquor case set for trial the Monday following the date of the homicide,—to either change his testimony or absent himself from court. The entire family of deceased had retired when appellant reached their house. He roused them and wanted Earl to come out and talk to him. Deceased accompanied Earl to the porch. The state's theory further was that Earl refused the approaches of appellant, stated his testimony and that he was going to tell it that way, in which announcement he was upheld by deceased, whereupon appellant became angry and shot first deceased and then Earl, as the latter fled.

Appellant's theory was that he did not go to said place for the purpose of having trouble with said parties, or to improperly influence or threaten Earl, but that he wanted to see Earl about what he was going to do about his testimony, and that he shot deceased in self-defense against an attack or threatened attack on the part of deceased. He said he did not know what made him shoot Earl.

In his cross-examination he admitted that he had been indicted for some fifteen other felony cases, many of them for selling liquor, but claimed that he had been tried in only one and convicted in none. He was further asked, as set out in bills of exception 6, 7 and 8, referred to and discussed in our original opinion, if he had not prior to this homicide gone to one Shamburger, a witness against him in a liquor selling case; also to one Petit who was in the same attitude, and if he had not told these parties what he would do to them if they testified against him in said liquor cases. The state proved a general threat made by appellant against all persons who might so testify, as is set out in our former opinion.

Under the facts of this case, for the purpose of rebutting appellant's claim of self-defense, and that he went to the home of deceased for a purpose other than to kill or compel Earl Hamilton by force or otherwise to change his testimony or absent himself from court,—and also to show animus and motive of appellant in the entire transaction at the home of deceased, we think the state entitled to prove said general threat, and in line with same to show by appellant while a witness, if they could,

that he had gone to other parties,—witnesses against him in similar cases, —and threatened them or induced them to change their testimony or absent themselves from court. The questions complained of seem to have had this in mind, but the inquiry was not further pressed after appellant's negative answers thereto.

Mr. Underhill in section 153, in his work on Crim. Ev., cites many authorities supporting the proposition that when the issue is the present intention of the accused, testimony involving the commission of other offenses is admissible if relevant. He says: "It is relevant to prove that the person whose intention is in question had performed acts of a precisely similar nature either before or after the act the intention of which is in question." Mueller v. State, 85 Texas Crim. Rep., 346, 215 S. W., 93; Brown v. State, 86 Texas Crim. Rep., 8, 215 S. W., 323; Bottomley v. United States, 1 Story, 135; McGlasson v. State, 37 Texas Crim. Rep., 620, 40 S. W., 503; Carnes v. State, 51 Texas Crim. Rep., 437, 103 S. W., 403; Wyatt v. State, 55 Texas Crim. Rep., 73, 114 S. W., 812, are cited in the notes under the above section. Mr. Underhill discusses in sections 151-152-153, etc. of said work the admissibility of testimony which may tend to prove other offenses when relevant to show guilty knowledge and purpose, or to establish the intent or motive of a given act or deed from circumstances, or to rebut a claim or inference, of innocent intent or mistake.

The case of Baird v. State, supra, and Clark v. State, supra, relied on by appellant, are on facts so wholly different from those which appear in the instant case, which will be seen upon inspection of the opinions in said cases, as to render unnecessary any extended discussion of them to show that both on their facts and the legal principles announced by this court, in each, they are wholly different.

In line with what we said in our original opinion, however, it seems clear that the questions asked, and under discussion, having been answered in the negative, there would be no doubt of the correctness of the holding that bills of exception 6, 7 and 8 reflect no reversible error. In addition to those authorities cited in the original opinion and as supporting this announcement, see Huggins v. State, 60 Texas Crim. Rep., 214, 131 S. W., 596; Thomason v. State, 105 Texas Crim. Rep., 119, 286 S. W., 1106; Musick v. State, 106 Texas Crim. Rep., 207, 292 S. W., 223; Alexander v. State (Texas Crim. App.), 8 S. W. (2d) 176.

Appellant renews complaint of the argument of the district attorney, and we have again examined the record in view of said complaint. Bill of exception No. 13 as qualified by the court shows no error.

Without discussing in detail, we are of opinion that these complaints are without merit.

The motion for rehearing will be overruled.

*Motion overruled.*